WAIER v. PEERLESS OIL CO.

1. NUISANCE—REFINING OIL—FUMES.

Refining oil is a legitimate business and not a nuisance *per se,* but it may become a nuisance by reason of fumes being given off.

2. SAME—NOXIOUS ODORS—INDUSTRIAL NEIGHBORHOOD.

Noxious odors present in industrial neighborhood do not justify introduction of others to cause discomfort to householders but do present circumstance bearing upon degree of annoyance and scope of relief.

3. SAME—HOUSEHOLDERS—INDUSTRIAL NEIGHBORHOOD.

Householders in industrial neighborhood may not complain of ordinary conduct of legitimate business not injurious to health as nuisance, but extraordinary or unnecessary noises or smells which introduce serious annoyances are actionable.

4. SAME—TANK CARS AND TRUCKS—NOISE.

Evidence *held,* insufficient to show that tank cars and trucks were handled in an extraordinary manner or with unnecessary noise in action to abate private nuisance arising from operation of oil refinery.

5. SAME—IRON COVERS OF TANK CAR DOMES—LOUD TALKING—IN-JUNCTION.

Clanging of iron covers upon domes of tank cars and loud talking of employees around oil refinery are unnecessary noises and householders in neighborhood are entitled to injunction restraining it.

6. SAME—SPILLING CRUDE OIL—SULPHUR GASES—AGITATOR—SUMP.
   Finding of trial court that noxious odors emanated from oil re-
   finery in the particulars that crude oil was spilled on the
   ground unnecessarily and sulphur gases were discharged from
   vent in agitator and open sump disturbing to the health of
   householders in neighborhood *held,* amply supported by record.

7. SAME—HEALTH—ODORS.
   Nuisance *held,* to exist only in so far as plaintiffs' health is
   affected by gases and odors not arising from spilling of oil at
   refinery.

Appeal from Saginaw; Martin (William H.), J. Submitted October 4, 1933. (Docket No. 27, Calendar No. 37,290.) Decided December 19, 1933.

Bill by Joseph Waier and wife against Peerless Oil Company, a Michigan corporation, to abate an alleged nuisance. Decree for plaintiffs. Defendant appeals. Modified, and remanded.

*Otto & Holland,* for plaintiffs.

*George Grant* and *O'Keefe & O'Keefe,* for defendant.

FEAD, J. The action is to abate a private nuisance, arising from the operation of defendant's oil refinery. The court held:

"That the refining plant of defendant in its process of distillation emits noxious gases, nauseous odors and irritating vapors, and that unusual, unnecessary loud and disturbing noises are created by the defendant upon its premises, all of which are discomforting and annoying and detrimental to plaintiffs' health."

The decree required defendant to abate the nuisance before June 15, 1932, and, on failure to do so,

"It is hereby perpetually enjoined from permitting noxious gases, nauseating odors and irritating

vapors to emanate from its said plant, and from creating unusual unnecessary loud, disturbing noises in the operation of its refinery."

Thirty-four years ago plaintiffs established their home in Carrollton township, Saginaw county. The neighborhood is industrial and odorous.

There are only about 25 homes in the vicinity. Two-hundred-fifty feet back of plaintiffs' home are railroad tracks. On the far side of the highway, in front, is another track. Across the road and 200 feet away is defendant's refinery, erected in 1931. When plaintiffs established their home a sawmill was operated on the premises now occupied by defendant. Later it burned down and for some years the land was used for pasture.

Forty-seven hundred feet from plaintiffs' home is a foundry, which produces unpleasant gaseous odors. Twenty-five hundred feet distant is the stagnant and smelly open sump of a tannery. Twenty-three hundred feet away is the city dump, proving its presence to the nostrils of the neighborhood. Thirty-seven hundred feet distant is a building in which dead animals are dismembered, to be sent to a rendering plant by trucks. The trucks pass plaintiffs' home. The witnesses are agreed as to the pungency of the odors, which remain long after the trucks have gone by.

The operation of refining oil is practically silent. The noises plaintiffs complain of occur in delivery of crude oil to the plant in railroad tank cars and motor trucks. On a tank car is a dome with iron cover attached by a chain. In unloading, the workmen permit the cover to drop and strike the dome or tank with a loud clang. In addition, there are noises caused by the switching of tank cars, the movement of trucks and loud talking of employees at night.

An oil refinery is a legitimate business and not a nuisance *per se,* but it may become a nuisance by reason of fumes being given off.   46 C. J. p. 717. The fact that other plants foul the air with odors does not justify introduction of another cause of discomfort to householders.   But their presence is a circumstance bearing upon the degree of annoyance and the scope of relief.   The district being industrial, home owners must endure inconvenience of noise and odor which would not be tolerated in a residential neighborhood.   They cannot complain of such as arise in the ordinary and skilful conduct of legitimate business so long as their health is not injured thereby.   But extraordinary or unnecessary noises or smells which introduce serious annoyances, above those which arise from the ordinary and proper conduct of the business, are actionable.   46 C. J. p. 667; *McMorran* v. *Cleveland-Cliffs Iron Co.,* 253 Mich. 65; *Dahl* v. *Utah Oil Refining Co.,* 71 Utah, 1 (262 Pac. 269); 1 Thornton's Law of Oil & Gas (4th Ed.), §§ 664–672.

The testimony does not demonstrate that the cars and trucks were handled in an extraordinary manner or with unnecessary noises.   Plaintiffs have shown no just cause of complaint in this respect.   The clanging of iron covers upon the tanks or domes is an unnecessary noise, easily avoided, and is particularly annoying because of its proclivity to startle a person out of sleep.   The loud talking of employees is also unnecessary, easily controlled, and disturbing because of its aptitude to awaken and keep a person awake.   In these two items, the noise nuisance exists and plaintiffs are entitled to relief from it.

The testimony as to odors is in sharp conflict and appears to be attended by some exaggeration on both sides, not uncommon in nuisance cases.   Plaintiffs complain of occasional nausea, vomiting, dizzi-

ness, headaches, irritated eyes and throats, which they attribute particularly to sulphur dioxide and hydrogen sulphide gases from defendant's plant. The latter gas has the smell of rotten eggs and plaintiffs say it penetrates the house, permeates the food and makes living in their home intolerable. Plaintiffs' daughter said the odor caused her hair to stand on end. Her mother corroborated the assertion. Perhaps, in the interest of accuracy and for the benefit of future scientific research, it should be recorded that the young lady wore her hair bobbed.

Defendant contends its plant produces neither of such gases nor any other which can have the effect claimed by plaintiffs and that the latter have not connected the refinery with their physical ailments or annoyances.

Both sides are supported by the testimony of neighbors and experts. Defendant had the larger number of witnesses. Some of the latter admitted perception of strong odors from the plant, especially the smell of gasoline and crude oil. Crude oil had been allowed to spill on the ground in considerable quantities. Doctors who attended plaintiffs testified to the odors and attributed the disorders of plaintiffs and others to the gases and impurities in the air. Plaintiffs do not claim the distressing gases are continuous but say they are frequent and depend upon direction of the wind.

Plaintiffs are unable to determine positively the specific causes of the gases but they suggest the hydrogen sulphide and sulphur dioxide gases are produced in and distributed from a device called the agitator, which has an air vent through which gases may escape, and an open sump into which the waste is drained. In that operation kerosene is agitated by steam. The crude oil carries traces of sulphur. Sulphuric acid also is put into the agitator to destroy

foreign particles in the kerosene. And it is claimed that the sulphur gases are thus generated and released.

Defendant presented several chemists who conducted experiments and testified that neither of the sulphur gases is produced at the plant in admeasurable quantities. Plaintiffs presented only one expert, a high school teacher of chemistry. The chemists could not agree upon whether sulphur gases were generated in the agitator. They undertook to demonstrate their contentions by an experiment. In their laboratories they distilled kerosene from crude oil to the condition at which it goes into the agitator. They brought the product into court and there added sulphuric acid. Defendant's chemists were unable to produce a smell. Plaintiffs' chemist evolved such an odor of rotten eggs as almost to clear the court room. The difference in results left the laboratory work open to suspicion and accusation. It is unfortunate, in view of the importance of the issue to both parties and the need for accurate determination of the cause of plaintiffs' difficulties, that the court did not suggest and witness a joint experiment of the whole process. The credibility of witnesses is a controlling factor in the case. It is clearly established that the refinery produces obnoxious fumes. The testimony of the doctors has much weight in demonstrating that the fumes are noxious—injurious to health. It is evident the court accepted the experiment of plaintiffs' chemist as the more reliable. We think the record amply supports the conclusion of the court that gases from defendant's plant have caused plaintiffs disturbances of health.

Defendant contends the decree is void, as too general. *Ballentine* v. *Webb,* 84 Mich. 38 (13 L. R. A. 321). The testimony is that the plant is operated in an ordinary and proper manner, except for the

named unnecessary noises and spilling crude oil on the ground. As to gases and odors not arising from the spilling of oil a nuisance exists only in so far as plaintiffs' health is affected. It would have been well had the court personally inspected the premises and conducted further investigation to determine the scope of the decree and make it as specific as the circumstances would permit. *Northwood* v. *Asphalt Paving Co.,* 126 Mich. 284 (54 L. R. A. 454); *MacKenzie* v. *Frank M. Pauli Co.,* 207 Mich. 456 (6 A. L. R. 1305).

The sources of nuisances which appear proved are:

1. The named unnecessary noises.

2. The spilling of crude oil on the ground, thereby adding an unnecessary odor.

3. The discharge of sulphur gases to the injury of plaintiffs' health from the vent in the agitator and from the open sump.

Specific mention and directions should be provided in the decree for those conditions and, of course, may be followed by a general clause, as appeared in the *Northwood Case.*

The circuit court will have the responsibility of enforcing the decree. Consequently, we desire the assistance of the court in determining its form. The cause will be remanded to the circuit court to conduct the investigation mentioned above and to recommend to this court a modified decree in accordance with this opinion. Counsel may present a form of decree for approval, under the practice as for settlement, both in circuit court and this court. Plaintiffs will have costs.

McDonald, C. J., and Weadock, Potter, Sharpe, North, Wiest, and Butzel, JJ., concurred.