238 So.2d 868

**B. G. PARKER et al.**

v.

**CITY OF MOUNTAIN BROOK, a Municipal Corporation, et al.**

**6 Div. 558.**

Supreme Court of Alabama.

June 18, 1970.

Rehearing Denied Oct. 22, 1970.

Thomas Seay, Birmingham, for appellants.

Brown, Pointer, Williams & Heaps, Birmingham, for appellees.

242

LIVINGSTON, Chief Justice.

Appellants joined with others in a suit, in Equity, against appellees to enjoin as a nuisance the use and operation of a garbage dump; and also, for like reason, the construction of a municipal garage facility, all in a residential area or district known as Cahaba Heights, an unincorporated community in Jefferson County. Not all the original complainants joined in this appeal, although notified to do so in accordance with law.

This appeal by six of the original eighteen complainants is from a final decree rendered on December 22, 1967, granting complainants partial relief, and from an amended decree, dated January 12, 1968, modifying the original decree. Such modification was at the instance of appellees.

Application for rehearing on the part of appellants was denied.

The suit involved in this appeal was filed on July 10, 1967. The transcribed testimony covers 671 pages of transcript paper. The record contains numerous exhibits, including moving picture films. The trial court heard the evidence ore tenus. The case was well presented to the trial court, and here, is well briefed to meet the assignments of error which are six in number.

The original decree contains paragraph ONE, (A), (B), and (C). Paragraphs (B) and (C) were amended on motion of appellees. We quote paragraphs ONE and (A) (which were not amended).

"ONE: The injunctive relief requested in the Bill of Complaint is denied and disallowed, with the following particular exceptions and instructions:

"(A) Respondents are hereby permanently restrained from entering into contracts with or permitting municipalities, corporations, individuals or other entities to use any portion of the real property described in the Bill of Complaint for purposes of garbage or trash disposal."

Paragraph ONE (B) as amended reads as follows:

"ONE (B): The trucks or other vehicles which carry and deliver garbage or other putrescent material to any portion of the dump site must be covered vehicles which enclose the said garbage or other putrescent material, and the hauling and delivery thereof in open vehicles is hereby expressly enjoined."

Paragraph ONE (C) of the final decree was amended by adding at the commencement thereof the words "On and after June 1, 1968." When these words are added, said paragraph ONE (C) reads:

"On and after June 1, 1968, the City of Mountain Brook shall provide a watchman or caretaker to prevent dumping, burning or scavenging on any part of

the dump site by individuals, parties or entities other than the City of Mountain Brook."

It appears from the pleading and the evidence that the City of Mountain Brook and Landfill Disposal, Inc., entered into a written contract whereby the latter, referred to as Lessor, leased to Mountain Brook forty acres of land, more or less, and agreed with Lessee to landfill its garbage, debris, trash, limbs, and other refuse which the city was authorized to dump on said land.

A sanitary landfill, so an expert testified, is the burying of garbage and material that is to be disposed of underneath the ground with progressive ramps or areas where the material is well compacted and covered after each day's operation with soil layer, then upon completion of the ramp, when no more garbage is to go on top, it is covered with approximately two feet of earth as a final cover for the top. Contention is made that there is no burning on the sanitary landfill. But there are no laws that give the right to control this; there are no regulations to prohibit or permit such burning.

Lessor agreed to provide all necessary labor to distribute all such garbage, debris, trash, limbs, and other refuse placed on said demised premises in an approved "landfill method," in such manner and at such times as to meet the approval and requirements of lessee and the Health Department of the County, State and United States and any municipality having jurisdiction thereof. The contract contained many other provisions not here necessary to relate.

The gravamen of the Bill of Complaint is that Landfill, Inc., is not operating a "landfill method" and is maintaining fires on said property for the purpose of burning said garbage, debris, trash, limbs, and other refuse, and is not covering said garbage, debris, trash, limbs and other refuse as provided by said lease, which operations disturb, annoy, trouble and vex complainants in the enjoyment of their homes, yards, premises and neighborhood by the constant flow of obnoxious and offensive odors, smoke, fumes, ashes, flies, roaches, and rodents onto their premises from said dump and into their houses. They also allege that said operations diminish the value of their homes; also, that the procession of garbage trucks belonging to Mountain Brook, frequently overloaded, are operated in a negligent and unsafe manner and are extremely noisy and give off obnoxious fumes and vapors and constitute a nuisance.

Appellants also complain that Mountain Brook is preparing to construct on a four-acre tract of land public works facilities and buildings for storage, maintenance and repair of vehicles, equipment and supplies belonging to it, and for parking areas, garages, service buildings, stations, sheds, offices, and other municipal facilities for the purpose of storing garbage trucks, bulldozers, and other heavy equipment, resulting in constantly created noises of such volume and character as to materially distress and discomfort complainants and other residents of Cahaba Heights area in the enjoyment and use of their properties as residences.

The appellants prayed that the Court order, adjudge and decree as follows:

(a) That a permanent injunction be issued against respondent, Landfill Disposal, Inc., denying the use of the land as a dump or place for disposal of garbage, debris, trash, limbs and other refuse.

(b) That an injunction be issued against respondent, Mountain Brook, permanently enjoining it from further hauling and dumping garbage, debris, trash, limbs and other refuse on the described area.

(c) That the use of the property by respondents, or either of them, for the purposes set out in the lease be permanently enjoined and prohibited.

(d) That the use of the property by respondents, or either of them, for the purposes set out in the lease (G) be permanently enjoined and prohibited.

(e) Prays for such other, further and different relief as may be just and proper in the premises as in duty bound complainants will ever pray, etc., and for general relief.

■ It occurs to us, without detailing the volume of evidence, that the testimony of expert witnesses, introduced by complainants, support the decree with respect to the operation of the dump area. We realize that pollution of the atmosphere, particularly in thickly populated areas, incorporated and unincorporated, present many problems that challenge the minds and ingenuity of experts and non-experts. A complete and effective solution or answer to these problems is not always available. At present, there is much agitation and many conferences as to what should and can be done to protect the public and the health of people, as well as to protect wildlife, against pollution.

The courts will have to proceed in a practical manner, awaiting scientific developments and advancement or modifications which will soften the impact and provide the needed relief. The ever increasing population serves to aggravate health problems arising from the disposal of refuse and garbage. Transfer of the disposal problem here involved to Shelby County, as advocated by complainants, would not necessarily be an answer. It could serve to transfer litigation from one point to another.

Mountain Brook, for approximately 20 years, used a 28-acre dump site located just outside the city limits. From the late 40's to 1957, it was an open dump utilized not only by Mountain Brook, but also by the City of Vestavia and by nearby unincorporated areas, with all waste being either burned or left exposed to scavengers. In 1964, it was zoned as a garbage dump by the County Commission of Jefferson County.

In 1957, residents of Cahaba Heights area near the dump site complained to the City and to the County Health Department about conditions at the dump, asking that it be closed or, in the alternative, converted to a sanitary landfill operation. A study was made and conclusion reached that conversion from open burning of garbage to a sanitary landfill method, coupled with restrictions upon access to the property, should produce an operation which will constitute no public health hazard and will not be detrimental to the residents of the surrounding areas. The conversion was made.

Mr. Paul Pate, Assistant Supervisor and Engineer in the Bureau of Sanitation, Jefferson County Department of Health, called as a witness for complainants, testified on cross-examination that he was at the landfill site on November 30, 1967; that he saw no exposed garbage; there was some debris and rubbish piled out on the east side of the roadway going to the landfill area; the site as a whole appeared to be in good condition; the garbage appeared to be disposed of with good landfill practices; he did not see any evidence of flies or rodents, and there were no strong odors, only a small amount of odor right at the site itself, which is normally to be expected. Witness further stated that the recommendation he participated in during 1957, using the landfill method, had principally been followed; that in his opinion the landfill operations were being conducted in a sanitary manner, and that there were no particular practices in the disposal of garbage he would recommend that have not been carried out.

Joe W. Riley, Jr., a Jefferson County Public Health Engineer, made some fifteen inspections of the site here under consideration during the past three years. Referring to an inspection on November 29, 1966, witness stated:

"On the date that this inspection was made, I made a visual inspection of the general conditions of the dump, of the landfill area. And it was being operated at that time in a manner that had been stipulated by the different health agencies as being proper."

Witness further testified that he had never seen rats at the property nor smelled any odors from the landfill while off the property. It was at the recommendation of the health department that the leaves, vegetation, and like refuse were accumulated and then burned.

W. H. Kittrell, an expert witness employed by the State Department of Public Health as the Director of the Vector Control Division in the Bureau of Environmental Health, testified that Vector Control means roughly the control of insects and rodents of public health importance and those conditions which have to do with breeding of them. He was introduced as a witness for complainants. He testified that he had no knowledge which would indicate that any of the recommendations that he made were not being carried out; also, that his department recognized the necessity of burning some of the refuse to reduce volume of some of the larger bulky items of trash or limbs.

It appears to us from the narrated evidence that respondents have been cooperating with the experts employed by the State Department of Health and by the Jefferson County Health agencies to meet the suggestions and demands of those agencies and experts, who on the whole approve the management and operation of the landfill area, including the burning of some refuse. It is true, possibly, that such operations are not perfect and do not completely eliminate all objections, but they reasonably conform to health standards and requirements promulgated by the health agencies. We are not impressed that the burning of trash or limbs at the site constitutes a health hazard or a nuisance as to justify injunctive relief against the same.

We are unwilling to overturn the decree of the trial court which heard the witnesses, expert and non-expert, and formed a judgment as expressed in its final decree as amended. Perhaps as science progresses in solving pollution problems, more advanced and modern methods will be found to eliminate or control pollution arising from disposal of garbage et cetera.

It would not advance the results of this case for this Court to burden this opinion with details of the volume of evidence adduced before the trial court. It appears that after the nisi prius court gave all parties ample opportunity to be heard, he reached a conclusion and adjudication appearing in his final decree as amended. The decree does not meet the desires of appealing complainants, who want the site closed and moved to Shelby County. Such removal would be only a transfer of the problem from one area to another—not necessarily a complete solution.

In Assignment of Error 6, appellants complain that the trial court erred in not issuing a permanent injunction enjoining respondent, City of Mountain Brook, from constructing public works facilities and buildings for storage, maintenance, and repair of vehicles, equipment and supplies and for parking areas, garages, service buildings, stations, sheds, offices and other municipal facilities for the purpose of storage of garbage trucks, trash trucks, street department trucks, bulldozers and other heavy equipment and for the purpose of repairing and maintaining said trucks and equipment on land described in the assignment, as prayed for in the original Bill of Complaint.

The trial court, after hearing the evidence, made a finding:

"With regard to the contemplated use of a portion of the described real estate [site of the landfill operations] by the City of Mountain Brook for the buildings above described, the Court finds that such use would be entirely proper and legally permissible."

This Court, in Jackson v. Downey, 252 Ala. 649, 42 So.2d 246, 247–248, observed:

"So if the facts averred present such a situation that if proven equity will intervene to grant relief, the case should

**246**

proceed to a hearing on the evidence for, as observed in the City of Tuscaloosa case, supra, 'complainant cannot be prevented from alleging facts in his complaint [to show a case for relief], but many time circumstances and the lack of evidence prevent proof of the matters alleged therein.' * * * And if after such hearing it should appear that the threatened injury is uncertain or indefinite or the use of the project only possible of injury—or that the public benefit is so largely to be served as to outweigh the inconveniences of the complainants as to render it, imperious to locate the diamond at the designated place rather than elsewhere—then it would be proper to refuse the injunction, in limine, and await the future use of the project to determine, if desired by complaints, whether or not a nuisance is being maintained. * * *"

Here, the trial court heard the evidence and concluded therefrom that the prospective use of the property to house certain facilities above mentioned was entirely proper and legally permissible.

We quote from our decision in Brammer et al. v. Housing Authority of Birmingham Dist. et al., 239 Ala. 280, 195 So. 256, 259, as follows:

" 'It is a general rule that an injunction will be denied in advance of the creation of an alleged nuisance, when the act complained of may or may not become a nuisance, according to circumstances, or when the injury apprehended is doubtful, contingent or merely problematical. And so where an injunction is sought merely on the ground that a lawful erection will be put to a use that will constitute a nuisance, the court will, ordinarily refuse to restrain the construction or completion of the erection, leaving the complainant free, however, to assert his rights thereafter in an appropriate manner if the contemplated use results in a nuisance.' * * *.

"The rule seems to be different, however, when the complainant shows that the injury to him will be a natural or inevitable consequence of the act and is a nuisance per se. Mere fear that it will result in injury to him is insufficient." (Citing cases.)

See also Kirk v. McTyeire, 209 Ala. 125, 995 So. 361; Sec. 1083, Title 7, Code of Alabama 1940, Recompiled in 1958.

The decree of the trial court is affirmed.

Affirmed.

LAWSON, MERRILL, HARWOOD and McCALL, JJ., concur.