This is an appeal from a judgment which enjoined the Town of Hokes Bluff from constructing a proposed open lagoon-type sewer treatment plant on certain land located outside the city limits in the Tillison Bend area of Etowah County
The City of Hokes Bluff, exercising its statutory authority, gave notice of its intent to construct and maintain the sewer system in question. Code 1975, § 11-50-50
Several residents and property owners in the Tillison Bend community brought suit to restrain the proposed construction as constituting a nuisance. After a trial with an advisory jury the court made the following findings of fact and conclusion of law
FINDING OF FACT
 The Court, on consideration of the recommendation of the advisory Jury had in this cause, and on the independent consideration of the evidence presented by the *Page 624 
Plaintiffs and Defendants in this cause, finds that:
 1. That the proposed sewer lagoon, being an open lagoon with clay bottom, surrounded by earth banks, being 20 to 30 acres in size and operating on the principle of oxygen breaking down the material placed therein, will constitute a private nuisance to the Plaintiffs named herein and the persons on whose behalf the action was filed:
 A. The lagoon will, if allowed to be constructed, produce vile and offensive odors of a nature to prevent the lawful enjoyment of the complaining parties
 B. That the odors, the production of which is undisputed, will cause the Plaintiffs irreparable injuries and damages and there can be no reasonable doubts that these injuries will result from the erection of the sewer lagoon at the location in Tillison Bend, Etowah County, Alabama, on the property of William Pitts, on the east side of the Coosa River near the Public Boat Launch on Lonz Road . .
CONCLUSION OF LAW
 The Court, with the aid of a jury, finds that the sewer lagoon about to be erected or commenced by the Town of Hokes Bluff will be a nuisance and will be irreparable in damage to Plaintiffs and such consequences are to a reasonable degree certain
It is, therefore,
 ORDERED, ADJUDGED AND DECREED that the Defendant, The Town of Hokes Bluff, a municipal corporation, be and is by this order enjoined and prohibited from erecting, constructing, or commencing the erection or
 construction of a sewer lagoon on the property located in Tillison Bend, Etowah County, Alabama, as is described and shown in the map made a part of the Finding of Fact in this decree, and of the type and nature described in the cause and in the Finding of Fact in this cause, all in accordance with the authority granted this Court in accordance with Code of Alabama 1975, Section 6-5-125 and any amendments thereto to date
Code 1975, § 6-5-125, provides that:
 Where the consequences of a nuisance about to be erected or commenced will be irreparable in damages and such consequences are not merely possible but to a reasonable degree certain, a court may interfere to arrest a nuisance before it is completed
The Town contends that the lower court's injunction is a judicial usurpation of municipal legislative authority because the Town has done nothing not expressly authorized by Code 1975, § 11-50-50
The Town cites City of Birmingham v. City of Fairfield,375 So.2d 438 (Ala. 1979), for the proposition that proof of negligence is required to sustain injunctive relief ordering abatement of a nuisance where the conduct giving rise to the condition complained of was expressly authorized by legislative act, and Gilmore v. City of Monroeville, 384 So.2d 1080 (Ala 1980), where this Court affirmed the denial of an injunction to abate the erection and operation of a public workshop because the evidence failed to establish nuisance per se
The Gilmore decision cites for its authority the case ofRouse Smith v. Martin Flowers, 75 Ala. 510 (1883), where the court affirmed the action of the lower court in dissolving an injunction prohibiting the erection of a cotton gin. In so doing the court observed:
 The cases are numerous where equity has intervened to prevent the carrying on of a business or vocation, although lawful in itself, on the ground of its being obnoxious to the health, comfort or convenience of neighboring residents, by reason of disagreeable noises, offensive odors, noxious gases and the like 1 High on Inj. §§ 772-73. No general rule can be laid down sufficiently specific and certain to apply to all cases; but, as often said, each case must be decided upon its own particular state of facts, and the whole question must be largely one as to degree, being determined in the light of human experience *Page 625 
We have carefully considered the following cases: Town ofVernon v. Wedgeworth, 148 Ala. 490, 42 So. 749 (1906); 1stAvenue Coal Lumber Co. v. Johnson, 171 Ala. 470, 54 So. 598
(1911); Brammer v. Housing Authority of Birmingham Dist.,239 Ala. 280, 195 So. 256 (1940); Downey v. Jackson, 259 Ala. 189,65 So.2d 825 (1953); City of Birmingham v. Scogin, 269 Ala. 679, 115 So.2d 505 (1959); Baldwin v. McClendon, 292 Ala. 43,288 So.2d 761 (1974); and Morgan County Concrete Co. v. Tanner,374 So.2d 1344 (Ala. 1979). In none of these cases has a trial court been reversed for granting an injunction under Code 1975, § 6-5-125, on issues similar to those posed in this case. We consider the case of City of Birmingham v. City of Fairfield,supra, to be distinguishable from the present case because here the location of the proposed lagoon is flexible, whereas inCity of Birmingham the location of the drainage problem under the circumstances of that case was fixed and the evidence was that the City of Birmingham had made the improvements reasonably and in accord with good engineering practice. In other words, the City of Birmingham had done nothing wrong by providing a proper system. The fact that the Fairfield drainage system was inadequate to accept all the water flowing into it, was no fault of the City of Birmingham, which had prudently exercised its statutory authority in improving its drainage system
The same basis, i.e., location, may be used to distinguish the case of Johnson v. Bryant, 350 So.2d 433 (Ala. 1977). There the extended pier and boathouse was authorized at a particular place by the Corps of Engineers
The principle of law which seems to be the most troublesome is the one stated in Fricke v. City of Guntersville, 251 Ala. 63, 36 So.2d 321 (1948), that "there can be no abatable nuisance for doing in a proper manner what is authorized by law." We do not question the soundness of this rule; however, it is clear from the rule itself that if the project will not be done in a proper manner then the nuisance is abatable. What then does the phrase "proper manner" mean in the context of this case?
We do not believe that when the legislature gave cities and towns the authority to construct sewer systems that it contemplated that they might locate the processing plants without regard to the consequences. The fact that the legislature sanctioned the location of these facilities outside of the corporate limits indicates a concern to remove them from highly populated areas
"Location is one factor to consider in determining whether a given activity constitutes a nuisance." Morgan County ConcreteCo. v. Tanner, supra. In 1st Avenue Coal Lumber Co. vJohnson, this Court stated:
 It is but right and proper that plants such as planing mills and coalyards and bins should not be located or carried on in the residence portion of a town or city, to the annoyance of the inhabitants thereof, though the business is a lawful and laudable one and is carried on in a proper manner. Of course, in determining whether or not a given plant, shop, or business is a nuisance by reason of its location, consideration must be given to its effect upon persons of ordinary sensibilities. It is not sufficient that it be considered a nuisance by those persons of very delicate and fastidious tastes or sensibilities; it must be of such character as to be a nuisance to those persons of average mental and physical condition, and those of normal sensibilities and tastes. — Joyce on Nuis. § 93
Location is also a factor in determining whether a proposed sewer project is constructed in a proper manner. Therefore, even though a project is authorized by law, it may nevertheless be constructed in an improper manner as a result of its location, and therefore be abatable
It is important at this point to emphasize exactly what the court restrained the Town from doing. The court did not prohibit the Town from constructing a sewer system, nor did it prohibit the Town from constructing any type of sewer system it chose. It merely prohibited it from constructing an *Page 626 
open lagoon-type disposal facility at this particular location, because in the court's opinion such construction and operation would constitute a nuisance to those residing nearby
Our final inquiry is whether there was sufficient credible evidence before the court to support its judgment. We note at the outset that all of the evidence which the trial judge heard is not before us because the appellant designated less than the entire reporter's transcript
The proposed open lagoon was to be located very near the bank of the Coosa River next to a public boat landing ramp in an area designated as a "flood prone area." There was testimony that the dikes or levees surrounding the lagoon would be raised to a height to withstand such a flood as is likely to occur only once in 100 years. There was other evidence that even so, it is usually not good practice to locate lagoons in flood areas. Written requirements of the Alabama Water Improvement Commission state:
Location
 Lagoons should be treated as any other type of sewage treatment plant in determining their location, i.e., one that is fairly well isolated from existing or proposed residential or commercial properties
 If possible, lagoons should be located so that prevailing winds are in the direction of uninhabited areas. An area that would allow an unobstructed wind sweep across the lagoons is preferred
 The location of lagoons in areas likely to flood is discouraged. In all cases, provisions shall be made to divert storm water around the lagoon
 Soil characteristics shall be thoroughly investigated by borings at a representative number of points over the area. The lagoon bottom should be watertight. Locations over creviced rock, excessively porous soil, or soluble material should be avoided unless it is planned to stabilize the bottom to prevent liquid loss and pollution of subsurface waters
 Prior to submission of detailed plans and specifications for any project involving a lagoon, this office shall be furnished a letter of intent outlining the scope of the project. A small sketch map locating the lagoon site by appropriate quarter section, section, range, and township shall be included with this letter. This material will be used to request an opinion from the Geological Survey of Alabama on the suitability of the site with respect to sub-surface geologic and hydrologic conditions. A favorable opinion from the Geological Survey is a requirement on all lagoon sites
After a field investigation the Geological Survey of Alabama stated, "[T]his site is considered poor for but probably adaptive to the construction of the proposed lagoon."
The testimony showed that there were 9 houses within 1000 feet of the lagoon and 42 houses within 2000 feet. The evidence is not clear exactly how close some of the houses are to the lagoon. As we indicated earlier, all of the evidence is not before us
The extent of the odor which would emanate from a lagoon of this type is not clear, but all the witnesses agreed that it would give off odor, especially during rapid changes in the weather
There was considerable testimony concerning the relative merits and demerits of an alternate site. The alternate site was in a less densely populated area
We have not attempted to set out all the evidence in the record. The engineer employed by the Town to design the project testified at length and his testimony was generally supportive of the Town's position
Having reviewed the record, we are of the opinion that there was sufficient evidence in the record to support the trial court's conclusion. This is especially true in view of the fact that the trial judge had evidence before him for his consideration which is not before this Court
We think it fair to comment that the probable reason for designating less than the entire record on appeal was to present only the facts necessary to raise a question of law relative to the equitable powers of a *Page 627 
circuit court to restrain a project authorized by legislative enactment. That question of law is presented by the record and we have resolved it adversely to the Town of Hokes Bluff. The judgment granting the injunction is hereby affirmed
AFFIRMED
TORBERT, C.J., and JONES, SHORES, BEATTY and ADAMS, JJ., concur
MADDOX, FAULKNER and EMBRY, JJ., concur specially