This is an appeal from an order granting a preliminary injunction against an anticipated nuisance, pursuant to Ala. Code 1975, § 6-5-125. That order enjoined the completion and operation of a plant that would treat lumber with a chemical compound known as creosote.
In 1988 W. Gary McCord purchased a parcel of land located in Blount County. That parcel was adjoined by parcels of property owned by the Green and the Corbitt families. Both families maintain residences on their respective pieces of property. The area in which those parcels are located is rural and is not zoned. In January 1989, McCord met with Green, Corbitt, and other area property owners and told them that he intended to build a lumber treatment plant that would utilize a coal tar-creosote solution to treat the lumber. Some of the assembled property owners expressed reservations concerning the plant, and others told McCord that they objected to his proposed use of the property. Although McCord had begun preparing the ground for the construction of the plant, no concrete had been poured at the time of that meeting.
After delaying construction for one week following that meeting, McCord began construction of the plant, which was essentially completed by May 1989. The plant is based on an eight-inch reinforced concrete pad, with insulated walls, and is fully covered by a roof. Treatment of the lumber would be accomplished by placing it in two large cylinders, which would then be bolted *Page 744 
shut. A solution composed of coal tar and creosote would then be pumped into the cylinders, and through a process utilizing heat and pressure the solution would impregnate the wood. The treatment process would also remove the water from green wood, and at the conclusion of the process, that water and the excess creosote solution would be pumped back into storage tanks by a vacuum system. The treatment cylinders and storage tanks are placed in concrete pits surrounded by dikes. Those pits are large enough to contain the contents of the cylinders and tanks in the event of leakage or rupture. The waste water resulting from the process would eventually be carried off the property, along with the excess creosote solution, to be disposed of at another site. Following the treatment process, the lumber would be removed from the cylinders, and temporarily placed in an open-sided storage area of the building, to await transfer off the property. According to McCord's testimony, the treated wood would be removed from the property each day, and the property would not be used as a storage facility for treated lumber.
McCord obtained much of the equipment that has been incorporated into the treatment plant from a wood treatment plant formerly operating in the Wylam area of Birmingham. McCord testified that that equipment has been updated or rebuilt and will be complemented by the addition of filters, a cooling tower, and gas and liquid traps on the storage tanks. According to the testimony of an engineer employed by the engineering firm that designed the plant, this additional equipment would significantly reduce the amount of creosote vapor discharged into the atmosphere. In addition, the Wylam plant, unlike McCord's plant, disposed of its waste water by evaporation, and stored treated wood on the premises for extended periods of time.
On February 1, 1989, Green and Corbitt filed a complaint against McCord in the Circuit Court of Blount County. They alleged that the operation of the plant would interfere with the use of their property, cause them physical discomfort, and render their homes unfit for reasonable human habitation. The complaint alleged that those damages would be the inevitable result of the normal operation of McCord's plant, which would involve the discharge of noxious fumes, odors, and other pollutants into the atmosphere. Green and Corbitt requested the court to issue a preliminary injunction to halt further construction or operation of the plant, and after trial, to permanently enjoin the operation of the plant.
On May 19, 1989, a hearing to consider the motion for a preliminary injunction was held. At that hearing two experts testified for Green and Corbitt. Dr. Oestenstad, an industrial hygienist, testified concerning the distance at which odors from McCord's plant would be discernible. Although Dr. Oestenstad had never seen a wood treatment plant in operation, he testified that he had reviewed scholarly literature on the type of process to be employed at McCord's plant. He concluded that, in the absence of a prevailing wind, odors from McCord's plant would be detectable at approximately 900 feet. However, he further testified that an accurate estimate would depend on the quantity of creosote vapors emitted, the efficiency of the plant's vacuuming process, and other variables that could not be known until McCord's plant began operation. Dr. Oestenstad also testified that the presence of trees, such as those that partially screen McCord's property from that owned by Green and by Corbitt, would also affect the dispersion of creosote vapors.
The second expert, Laurence Ross, a chemical engineer, also testified about the dispersion of odors from the plant. Ross was not familiar with McCord's plant or with the equipment to be utilized there. Basing his conclusion in part on a plant located in California, and in part on a hypothetical model, Ross concluded that McCord's plant would produce an odor that would be discernible at 400 feet. However, Ross's calculations were based on a plant using a pure creosote solution, unlike McCord's proposed coal tar-creosote solution. Ross testified that this variable would affect the validity of his calculations. Ross also stated that the accuracy of his *Page 745 
calculations would depend on the actual amount of creosote vapors released, a figure that could not be known until the plant began operation. Finally, he testified that his calculations would be affected by the presence and efficiency of emission control devices and vacuuming systems, a factor that varies from facility to facility.
On July 14, 1989, the circuit court entered an order granting the motion for a preliminary injunction. In that order the court found that the wood treatment process, if allowed to begin, would involve the release of unspecified amounts of creosote vapors into the atmosphere, and due to the offensive smell of creosote and the noise associated with the operation of the plant, would unreasonably interfere with the Greens' and the Corbitts' use of their land and would constitute a private nuisance under Ala. Code 1975, § 6-5-120. The court further found that that anticipated nuisance could be enjoined under §6-5-125, and rejected McCord's contention that the relief authorized by that section could be utilized only following a showing that the act to be enjoined was a nuisance per se. The court held that such a holding would appear to change the plain meaning of that section. It is from that order that McCord appeals.
Section 6-5-125, which authorizes the injunction of an anticipated nuisance before its completion, is set out below:
 "Where the consequences of a nuisance about to be erected or commenced will be irreparable in damages and such consequences are not merely possible but to a reasonable degree certain, a court may interfere to arrest a nuisance before it is completed."
This Court has long recognized that the granting of injunctive relief in general, and the injunction of anticipated nuisances in particular, are extraordinary powers that must be cautiously and sparingly exercised. St. James' Church v. Arrington,36 Ala. 546, 548-49 (1860). Because of the great degree of caution that must be utilized, this Court has been exceedingly unwilling to enjoin a proposed enterprise until it has been proven at trial to be a nuisance. Arrington, supra; Ray v.Lynes, 10 Ala. 63 (1846).
Although § 6-5-125 authorizes the injunction of anticipated nuisances, such injunctions should be denied unless the plaintiff shows to a reasonable degree of certainty that the anticipated act or structure will, in fact, constitute a nuisance:
 " ' "It is a general rule that an injunction will be denied in advance of the creation of an alleged nuisance, when the act complained of may or may not become a nuisance, according to the circumstances, or when the injury apprehended is doubtful, contingent or merely problematical. And so where an injunction is sought merely on the ground that a lawful erection will be put to a use that will constitute a nuisance, the court will ordinarily refuse to restrain the construction or completion of the erection, leaving the complainant free, however, to assert his rights thereafter in an appropriate manner if the contemplated use results in a nuisance." . . .
 " 'The rule seems to be different, however, when the complainant shows that the injury to him will be a natural or inevitable consequence of the act and is a nuisance per se. Mere fear that it will result in injury to him is insufficient.' (Citing cases.)"
Parker v. City of Mountain Brook, 286 Ala. 241, 246,238 So.2d 868, 873 (1970) (quoting Brammer v. Housing Authority ofBirmingham Dist., 239 Ala. 280, 283-84, 195 So. 256, 259
(1940)).
A nuisance per se is an act, occupation, or structure that is a nuisance at all times and under any circumstances, regardless of location or surroundings. 66 C.J.S. Nuisances § 3 (1950). The nuisance per se doctrine has long been recognized by this Court and was restated with approval in Gilmore v. City ofMonroeville, 384 So.2d 1080 (Ala. 1980). The number of nuisances per se is necessarily limited. See 58 Am. Jur.2d,Nuisances § 16 (1989). Generally, activities or structures that are not illegal are not nuisances per se. See, e.g., Engle v.Scott, 57 Ariz. 383, 114 P.2d 236 (1941); Beckwith v. Town ofStratford, *Page 746 129 Conn. 506, 29 A.2d 775 (1942); Leatherbury v. Gaylord Fuel Corp.,276 Md. 367, 347 A.2d 826 (1975); Waier v. Peerless Oil Co.,265 Mich. 398, 251 N.W. 552 (1933); Purcell v. Davis, 100 Mont. 480, 50 P.2d 255 (1935); Morgan v. High Penn Oil Co.,238 N.C. 185, 77 S.E.2d 682 (1953).
In its order the trial court implied that this Court abandoned the nuisance per se doctrine in Town of Hokes Bluffv. Butler, 404 So.2d 623 (Ala. 1981), and Green and Corbitt urge this Court to accept their contention that injunctive relief under § 6-5-125 can be proper without a showing that the act complained of is a nuisance per se. We do not accept either of those positions. In Town of Hokes Bluff, supra, this Court affirmed the issuance of an injunction halting the construction of an open sewage treatment lagoon, finding that sufficient evidence supported the trial court's determination that the lagoon would constitute a nuisance. Town of Hokes Bluff, supra, at 626. That affirmance was partly due to the fact that all of the evidence before the trial court was not available for review by this Court. Id. In such cases this Court must assume that the evidence supported the trial court's determination.Totten v. Lighting Supply, Inc., 507 So.2d 502 (Ala. 1987). No mention was made of Gilmore, supra, in that opinion, and it was not this Court's intention to overrule, sub silentio, the nuisance per se doctrine.
This Court reaffirms that the extraordinary powers authorized by § 6-5-125 should be exercised only when the complainant has shown to a reasonable degree of certainty that the act or structure he seeks to enjoin will be a nuisance per se. Alabama courts have long utilized the "comparative injury doctrine" when deciding the propriety of issuing an injunction. This doctrine requires the court to consider the injury that either party would suffer should the injunction be granted or refused.Fowler v. Fayco, Inc., 290 Ala. 237, 275 So.2d 665 (1973). In cases such as this one, where the feared injury is at best speculative, an injunction under § 6-5-125 would be unduly harsh. However, allowing the plant to begin operation would not deprive Green and Corbitt of their opportunity to attempt to demonstrate to the court's satisfaction that the plant is a nuisance in fact.
Green and Corbitt have failed to demonstrate that the operation of McCord's plant would be a nuisance per se. The testimony of their expert witnesses was to some degree speculative, because it was partially based on incomplete or assumed facts. Their testimony and the remainder of the evidence does not show, to a reasonable degree of certainty, that the operation of McCord's plant would cause irreparable damage. Therefore, injunctive relief under § 6-5-125 was not proper. Gilmore, supra. This holding does not mean that Green and Corbitt are not "free, however, to assert [their] rights [later] in an appropriate manner if the contemplated use results in a nuisance." Parker, supra, 286 Ala. at 246,238 So.2d at 873. The judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.