HOUSTON, Justice.
The defendant appeals from an order granting a permanent injunction against an anticipated nuisance, pursuant to Ala.Code 1975, § 6-5-125. That order “permanently enjoined and restrained [William H.] Parker from any acts or actions in furtherance of constructing and operating a dirt racing track or any similar facility at the existing excavated location ... on the parcel of land [made the] subject of this action.” We affirm, although not on the rationale stated by the trial court.
William H. Parker had resided on a 15-aere tract of land for more than 20 years. On January 4, 1994, he purchased an adjoining 20 acres of land with the intention of building a dirt racetrack. The plaintiffs are 31 individuals who own property located within 1.5 miles of the proposed racetrack. The proposed track adjoins the property of plaintiffs Jody and Robert Porter and Susan and Arnold Moore, on which those plaintiffs *215 maintain residences. These parcels of land are located in an unzoned area of Shelby County that is primarily rural. The plaintiffs sued to enjoin Parker from constructing and operating the proposed racetrack, with the principal allegation being that the noise and the lights from the racetrack would constitute a nuisance.
After hearing ore terms evidence and after personally inspecting the racetrack site, the trial court entered a temporary restraining order, making the following findings of fact (which it later adopted in its final order granting the permanent injunction):
“FINDINGS OF FACT
“The Court finds as follows:
“1. That the plaintiffs Robert L. Porter, Jr., and Mr. and Mrs. Moore own property adjacent to the proposed racetrack property owned by [Parker].
“2. That the property of plaintiff Robert L. Porter, Jr., lies within one hundred yards of where the proposed track will be located.
“3. That the property of plaintiffs Mr. and Mrs. Moore is also in very close proximity to the proposed racetrack.
“4. That the other plaintiffs are owners of property located approximately one to one and one-half miles from the proposed racetrack.
“5. That [Parker] did not notify any of the plaintiffs before he commenced excavation work toward building the proposed racetrack.
“6. That only some excavation work [had] been done by [Parker] prior to the hearing on the cause.
“7. [That Parker’s] track will be open to the public and [he] anticipates that when the racetrack is open, the races will number five, having six to ten cars in each race, and occurring on Fridays beginning at 7:00 P.M. and ending around midnight.
“8. [That Parker’s] plans are to have six 1,500-watt lights (some in the direction of plaintiffs Robert L. Porter, Jr., and Mr. and Mrs. Moore) and have cars split into four classes, to-wit: (1) hobby class, (2) pony class, (3) hog class, and (4) super street class.
“9. That [Parker] testified that all races will be without mufflers and that the sound of such race ears [is similar to that of] a garbage truck being without a muffler from where [Parker’s] house is located, which is approximately the same distance as from the Porters’ house to the racetrack, if not a little closer.
“10. That an audiologist testified:
“a) That a normal conversational speech ... ranges between 50 and 60 decibels;
“b) That a person’s speech should be 28 decibels above any other sounds;
“c) That there is a danger posed to one’s hearing if [one is] exposed to loud continuous sounds;
“d) That an increase of 6 decibels is tantamount to a 100% increase in sound;
“e) That if one has been in a quiet environment and is then subject to loud noise, then this could change one’s blood pressure and/or heart rate and can cause irritability;
“f) That OSHA recommends that persons exposed to sound not be subjected to noise for any appreciable period of time should the sound exceed a certain decibel range, i.e., 90 decibels for only 8 hours, 105 decibels for only 2 hours, 110 decibels for only 30 minutes, and 115 decibels for only 15 minutes.
“g) That readings of sound were taken at the Talladega Short Track showing that the pony class with a muffler had a decibel reading of 97.7, the open wheel modified a reading of 118.6 in the pits and 112.67 from the bleachers.
“The court finds the audiologist’s testimony credible.
“11. That traffic attending the racetrack would have to cross over a buried gasoline pipe belonging to Colonial Pipeline [Company], which experienced a leak in 1985 and [that leak] if ignited, could have caused a serious explosion.
“12. That [Parker] has proceeded without a permit from the Alabama Department of Environmental Management.
*216 “13. That the racetrack will generate dust[, ... ] which [Parker says] he will be able to water down.
“14. That the racetrack will also contain a P.A. (public address) system.
“15. That plaintiff Robert Porter’s wife, who resides with him, has a job in the health profession which requires her to go to bed at 9:00 to 9:80 Friday night for her [to begin] work early Saturday morning.”
Thereafter, the trial court conducted a hearing on the requests for preliminary and permanent injunctions and entered the following “FINAL ORDER OF INJUNCTION”:
“THIS CAUSE came to be heard for a final adjudication on the 27th day of April 1994, and was submitted by the parties on the pleadings of record in this cause and stipulations by the parties that the court could also consider the testimony at the temporary restraining order hearing and merge the preliminary injunction hearing into the final hearing. Upon consideration thereof, together with the ore tenus testimony, the court enters the following findings of fact and the following order:
“The court finds:
“This is an action for an injunction to enjoin [Parker] from constructing and operating a dirt racetrack or similar facility. [Parker] began construction several weeks prior to the hearing on the temporary restraining order, [and] a good bit of excavation work was done. The court viewed what had been completed and also viewed plaintiffs’ properties, of which two [the Porters’ and the Moores’] were adjacent to the proposed track. The proposed racetrack is [located where] there is no zoning. [Parker] proposes to run six to ten cars each race and [to have the track] open from April 1 to October 1 each year, with four to five races each night. The track would be open to the public. An existing dirt racetrack nearby has anywhere from 200 to 2000 people ... to attend on a given night, with about 60 to 600 cars being driven thereto and parked. Many times the spectators drink at such events. However, [Parker’s] rules prohibit this from occurring at his track, although the only way of monitoring this ... would be [for Parker to provide] off-duty peace officers. [Parker] admits drinking might occur. A public address system would be employed to call the races. The track proposed [has] an oblong configuration and will be elevated decreasing from ground level toward the inside at [a 6-degree] angle, with the lowest point slightly over thirty feet. The race cars are proposed to be without mufflers and have speeds up to about 60 m.p.h. It is anticipated by [Parker] that occasionally a car will go off the track. As the track would be a dirt track, dust can be expected. [Parker] contends [that] he can control this to an extent. [Parker] also will have at least six 1,500-watt lights around the track. [Parker] has also made application to ADEM for a permit.
“The plaintiffs Robert Porter and his wife Jody Porter, and Arnold Moore and his wife Susan Moore, have their homes around 100 feet to 150 feet from the proposed track location. Other plaintiffs are farther away, but no more than [1.5] miles away.
“Two experts in the field of audiology testified, one testifying for [the plaintiffs] and the other on behalf of [Parker]. According to the plaintiffs’ expert, [a person as close as the Moore and Porter] properties while racing [was] going on under the conditions to be allowed by [Parker] could sustain hearing loss. [Parker’s] expert conceded that even though noise travels by waves and can be deflected and even though the racetrack would be bowl-shaped, ... given the conditions that would exist on the Porters’ and Moores’ properties, he ([Parker’s] expert) would not live there.
“Another dirt track owner and operator testified to dust conditions and ... [said] he had a creek for access to substantial amounts of water, whereas [Parker] did not. [That] witness said that even on his track there still would be dust. [He said he] believed 2,000 gallons of water for a dirt track event would be insufficient.
“Further, many spectators that frequent the track drink, are rowdy, and throw trash along the way.
*217 “It is the opinion of the court after hearing testimony in this cause that not to enjoin [Parker] from constructing and operating the proposed racetrack would cause irreparable injuries to the plaintiffs, as the sound ... of the race cars could cause hearing loss for the Moores and Porters; the dust would travel on the Moores’ and the Porters’ properties; the lighting of the track would disturb the Moores’ and the Porters’ quiet enjoyment of their properties; the P.A. system would be loud, annoying, and troublesome to the Moores and the Porters; there is also the danger of the race cars going off the track [onto] the Moores’ and the Porters’ properties; there is the danger of excessive drinking by patrons of the track and the danger of a nearby pipeline erupting; and the properties of the plaintiffs would be greatly diminished.
“The court has considered [Parker’s] reducing the noise level at the Porters’ and the Moores’ property to not exceed 50-60 decibels at any one time, increasing the water on the track to eliminate dust, daytime racing or substantially lessening the lighting, ordering [Parker] to erect further barriers to avoid any race cars going off the track onto [the Porters’ and the Moores’] properties, and ordering [Parker] to affirmatively show to the court that there is no danger of eruption of the Colonial pipeline. However, due to the location of the [Moore and Porter] 'properties, it is the opinion of the court that [Parker’s] dirt racetrack would be a nuisance per se.
“The court further adopts its findings of fact in the order entered in this cause on March 25, 1994 [granting the temporary restraining order].
“CONCLUSIONS OF LAW
“Rule 65, A.R.Civ.P., and Ala.Code 1975, § 6-5-125, both provide for enjoining nuisances, the [statute allowing an injunction if the plaintiff shows] to a reasonable degree of certainty that the anticipated act or structure would, in fact, constitute a nuisance per se and that ... injury not be speculative. McCord v. Green, 555 So.2d 743 (Ala.1989). Injunctive relief against nuisances should be cautiously given. Johnson v. Bryant, 350 So.2d 433 [(Ala. 1977) ]. In the case of Morgan Concrete Co. v. Tanner, 374 So.2d 1344 (Ala.1979), the fact that the property [on which] a ready mix concrete plant was to be constructed and operated was rezoned [for] general industrial [activities] and that the plant was operated in a proper manner in accordance with environmental standards did not preclude the Court from finding that noise and dust arising from the operation of such plant caused substantial and unreasonable interference with the use and enjoyment of adjoining homeowners’ property so as to constitute a nuisance. Increased traffic may also be one element of a nuisance action. Fugazzoto v. Brook-wood One, 295 Ala. 169, 325 So.2d 161 (1976). A lawful business may become a nuisance when improperly maintained. Fowler v. Fayco, Inc., 290 Ala. 237, 275 So.2d 665 [ (1973) ]. Finally, a lawful business, not a nuisance per se in one locality, may become such when erected and maintained in another locality. See Higgins v. Block [Bloch], 213 Ala. 209, 104 So. 429 (1925).”
(Emphasis added.)
A nuisance is “anything that works hurt, inconvenience or damage to another_ The inconvenience ' complained of must not be fanciful or such as would affect only one of fastidious taste, but it should be such as would affect an ordinary reasonable man.” Ala.Code 1975, § 6-5-120. If it is impossible, before the construction of a project has been completed and the project is operating, for a court to ascertain whether it will or will not constitute a nuisance, or if reasonable doubt exists as to the probable effect of the proposed project, then a court will not intervene until the project is completed and can be tested by actual use. That is, if from the facts it appears that the injury or harm alleged by the persons seeking an injunction is uncertain or speculative; that the use of the project is only possibly productive of injury; or that the public benefit to be served by the project may outweigh the inconvenience caused to the plaintiffs, then the court must refuse the injunction and await *218 the completion and operation of the project to determine whether the project is a nuisance. See, e.g., Jackson v. Downey, 252 Ala. 649, 42 So.2d 246 (1949).
However, “[w]here the consequences of a nuisance about to be erected or commenced will be irreparable in damages and such consequences are not merely possible but to a reasonable degree certain, a court may interfere to arrest a nuisance before it is completed.” Ala.Code 1975, § 6-5-125; see Rouse & Smith v. Martin & Flowers, 75 Ala. 510, 51 Am.Rep. 463 (1883). For the court not to interfere would be “ ‘to ignore the location [of the proposed project] and the court’s common knowledge of the inevitable consequences to follow upon the conduct of the business which [the] defendant proposes to carry on, however well conducted.’ ” Jackson v. Downey, supra, 252 Ala. at 652, 42 So.2d at 248, quoting Bloch v. McCoum, 219 Ala. 656, 658, 123 So. 213, 215 (1929). An activity that is lawful in its nature and that is not a nuisance in one locality may be or become a nuisance when erected and maintained in certain other localities, depending on the particular location of the activity and the way it is managed or operated. See Nevins v. McGavock, 214 Ala. 93, 106 So. 597 (1925). In determining whether an activity is or has become a nuisance, a court must consider its effect upon an ordinary reasonable person—i.e., a person of ordinary sensibilities; it is not sufficient that it would be considered harmful or inconvenient by a person of fastidious tastes or sensibilities. See, e.g., First Avenue Coal & Lumber Co. v. Johnston, 171 Ala. 470, 54 So. 598 (1911).
We recognize that Parker seeks to operate a lawful business on his property. However, the rights of the plaintiffs residing in the immediate vicinity cannot be unreasonably interfered with by the intrusion of a business or activity that by its nature would cause an unreasonable and continuous or recurring annoyance to the plaintiffs, would prevent the enjoyment of their property, and would disturb the quietude and pleasure otherwise to be found in their homes.
Applying the foregoing principles to the facts of this case, we conclude that the Porters and the Moores have demonstrated that it is not reasonably possible for the proposed racetrack to be constructed and operated in a manner that would not create a nuisance. That is, considering the location of the proposed racetrack and the effect the noise and the lights from the racetrack would have on the Porters and the Moores, the trial court could find it to a “reasonable degree certain” that the proposed racetrack would cause them irreparable damage. Therefore, we affirm the trial court’s injunctive order. See Ala.Code 1975, § 6-5-125.
We note that in other cases this Court has interpreted § 6-⅜-125 to require that for an activity or project to be enjoined before it is “erected or commenced” the activity or project must be shown to be a nuisance per se. See, e.g., Gilmore v. City of Monroeville, 884 So.2d 1080 (Ala.1980); McCord v. Green, 555 So.2d 743 (Ala.1989); and R & D Trucking Co. v. Carter, 592 So.2d 1040 (Ala.1992). That interpretation of § 6-5-125 is overruled.
The trial court’s finding that the proposed racetrack would be a nuisance per se was erroneous and unnecessary. Nevertheless, based on the evidence presented, we conclude that the court correctly enjoined the racetrack pursuant to § 6-5-125.
AFFIRMED.
KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
MADDOX, J., dissents.