CAPITOL PROPERTIES GROUP, LLC v 1247 CENTER STREET, LLC

Docket No. 281112. Submitted February 3, 2009, at Lansing. Decided
April 16, 2009, at 9:05 a.m.

Capitol Properties Group, LLC, brought an action in the Ingham
Circuit Court against 1247 Center Street, LLC, and Thomas
Donall, seeking the abatement of an alleged nuisance and alleged
violations of city of Lansing noise ordinances with respect to loud
music from a nightclub operated by the defendants and adjoining
the plaintiff's residential and commercial rental property in an
area zoned for commercial use. The defendants counterclaimed
tortious interference with business expectancy. The court, Joyce
Draganchuk, J., granted summary disposition for the defendants.
The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court correctly granted summary disposition of the
nuisance per se claim. A nuisance per se is an act, occupation, or
structure that is a nuisance at all times and under any circum-
stances, regardless of location or surroundings. A nightclub pro-
ducing excessive noise only at certain hours is not a nuisance at all
times and under any circumstances.

2. The trial court correctly granted summary disposition of the
public nuisance claim. A public nuisance is an unreasonable
interference with a common right enjoyed by the general public.
Unreasonable interference includes conduct that (1) significantly
interferes with the public's health, safety, peace, comfort, or
convenience, (2) is proscribed by law, or (3) is known or should
have been known by the actor to be of a continuing nature that
produces a permanent or long-lasting, significant effect on these
rights. In this case, only the private claim of plaintiff and its
tenants has been presented. There was no showing of interference
with the public's health, safety, peace, comfort, or convenience.

3. The trial court correctly granted summary disposition of the
private nuisance claim. One is liable for a private nuisance if (a)
the other has property rights and privileges in respect to the use or
enjoyment interfered with, (b) the invasion results in significant
harm, (c) the actor's conduct is the legal cause of the invasion, and
(d) the invasion is either (i) intentional and unreasonable, or (ii)

unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. In this case, the plaintiff failed to show that it suffered significant harm or unreasonable interference.

4. The trial court correctly ruled that Lansing Ordinances, §§ 654.07(a) and 654.07(h), did not apply to this case. Section 654.07(h)—which prohibits a place of public entertainment from playing a radio, television, phonograph, drum, musical instrument, sound amplifier, or a similar device so as to exceed a sound level of 55 decibels on a residential real property boundary—does not apply because the properties of the plaintiff and the defendants were in an area zoned for commercial use. Section 654.07(a), a more general provision relating to the loudness of sound production and reproduction systems, does not apply because a reasonable lawmaker would not have expected it to apply to this case, given the possible application of § 654.07(h), which is a more specific provision that applies to places of public entertainment.

Affirmed.

M. J. KELLY, J., concurring in part and dissenting in part, agreed with the result but not the reasoning behind the majority's decision to affirm the summary disposition of the claims based on ordinance violation and public nuisance. He dissented from the decision to affirm the summary disposition of the claim based on private nuisance. The plaintiff established a factual question concerning whether the defendants' operation of the nightclub substantially and unreasonably interfered with the plaintiff's use and enjoyment of its property. The question must be resolved by the trier of fact at a trial, not by the trial court in a motion for summary disposition.

1. NUISANCE — NUISANCE PER SE.

A nuisance per se is an act, occupation, or structure that is a nuisance at all times and under any circumstances, regardless of location or surroundings.

2. NUISANCE — PUBLIC NUISANCES.

A public nuisance is an unreasonable interference with a common right enjoyed by the general public; unreasonable interference includes conduct that (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights.

3. NUISANCE — PRIVATE NUISANCES.

> One is liable for a private nuisance if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct.

4. STATUTES — JUDICIAL CONSTRUCTION — ABSURD-RESULTS RULE.

> A statute should be construed in a manner that avoids an absurd result; a statute need not be applied literally if no reasonable lawmaker could have conceived of the ensuing result.

*Abood Law Firm* (by *Andrew P. Abood*) for the plaintiff.

*The Gallagher Law Firm, PLC* (by *Byron P. Gallagher, Jr.*), for the defendants.

Before: SAWYER, P.J., and SERVITTO and M. J. KELLY, JJ.

SERVITTO, J. Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants. We affirm.

Defendant Thomas Donall is the president of defendant 1247 Center Street, LLC, a company that owns X-Cel, a nightclub located in the city of Lansing. Plaintiff owns a building containing residential and commercial units immediately adjacent to X-Cel. According to plaintiff, X-Cel plays music at levels that exceed those allowed by local ordinances and, among other things, constitutes a nuisance and interferes with plaintiff's right to the quiet enjoyment of its property. Plaintiff initiated this action seeking an abatement of the alleged nuisance or to enjoin defendants from operating X-Cel in violation of the applicable city ordinances. Defendant essentially denied the allegations and brought a counterclaim against plaintiff for tortious interference with

a business expectancy. After an evidentiary hearing, the trial court denied plaintiff's motion to abate the alleged nuisance, taking judicial notice that the area concerned is zoned G-1 or "business." The trial court later granted summary disposition in defendants' favor, opining that defendants were not in violation of Lansing noise ordinances. The trial court stated that plaintiff's claims of nuisance are based on a violation of such ordinances and that, failing to establish a violation, plaintiff's claims fail as a matter of law. This appeal followed.

Although defendants' motion for summary disposition was premised on MCR 2.116(C)(8), the court looked beyond the pleadings in granting the motion. We will thus treat the motion as having been alternatively granted under MCR 2.116(C)(10). *Sharp v City of Lansing*, 238 Mich App 515, 518; 606 NW2d 424 (1999).

A grant of summary disposition based on a failure to state a claim is reviewed de novo on appeal. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The pleadings alone are considered in testing the legal sufficiency of a claim under a MCR 2.116(C)(8) motion. *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). It is well established that for purposes of a motion under MCR 2.116(C)(8), all factual allegations in support of the claim are accepted as true and viewed in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 119. The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Beaudrie v Henderson*, 465 Mich 124, 130; 631 NW2d 308 (2001).

"Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469

Mich 177, 183; 665 NW2d 468 (2003). When reviewing a motion under subrule C(10), this Court considers the pleadings, admissions, affidavits, and other relevant record evidence in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists warranting a trial. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

Plaintiff first contends that the trial court erroneously dismissed its complaint in that it did not accept the factual statements in the complaint as true. Plaintiff specifically asserts that the trial court should have accepted as true that defendants were violating local ordinances as alleged in the complaint. However, whether defendants violated a local ordinance is not a "fact" or even a reasonable inference drawn from the facts; it is a conclusion of law. A statement of plaintiff's conclusions, unsupported by allegations of fact, does not suffice to state a cause of action. See *Churella v Pioneer State Mut Ins Co (On Remand)*, 258 Mich App 260, 272; 671 NW2d 125 (2003). While plaintiff did allege that defendants produced more than 55 decibels of sound, a fact that must be accepted as true, whether defendants violated the noise ordinances is a legal conclusion based on the decibel levels and on interpreting where the local ordinance applies (see later discussion). The legal conclusion is insufficient to state a cause of action. Summary disposition with regard to an ordinance violation claim was thus proper, and any amendment of plaintiff's complaint concerning the violation would be futile.

Plaintiff also directs us to several paragraphs in its complaint, which it asserts, when taken as true, properly plead causes of action for nuisance. For example, plaintiff alleged in its complaint that "defendants' noise production at decibel levels above those [permitted] by

law constitute[s] an act, occupation, and structure which [is] a nuisance at all times and under any circumstances." According to plaintiff the above demonstrates a nuisance per se. Again, however, whether defendants violated an ordinance proscribing certain decibel levels is a legal conclusion. Moreover, a nuisance per se is "an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings," *Ypsilanti Charter Twp v Kircher* 281 Mich App 251, 269 n 4; 761 NW2d 761 (2008). Here, plaintiff claimed that the noise was a nuisance solely because of the club's location (next to residential loft apartments) and surroundings. A club producing excessive noise only at certain hours, or in the middle of the desert would not necessarily be a nuisance and, as such, is not a nuisance at all times and under any circumstances. Summary disposition was thus appropriate with respect to the nuisance per se claims, and any amendment of plaintiff's complaint concerning nuisance per se would be futile.

Plaintiff also asserts that it stated a claim for public nuisance in alleging that "defendants are interfering with the public's health, safety, peace, comfort, and convenience by producing noise in excess of 55 decibels" and "defendants' noise pollution is known or should have been known to defendants to be of a continuing nature that produces a permanent or long-lasting, significant effect on the public's health, safety, peace, comfort, and convenience."

Public nuisance is defined in *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 190; 540 NW2d 297 (1995), as an "unreasonable interference with a common right enjoyed by the general public."

> The term "unreasonable interference" includes conduct that (1) significantly interferes with the public's health,

safety, peace, comfort, or convenience, (2) is proscribed by law,
or (3) is known or should have been known by the actor to be
of a continuing nature that produces a permanent or long-
lasting, significant effect on these rights. A private citizen
may file an action for a public nuisance against an actor
where the individual can show he suffered a type of harm
different from that of the general public. [*Id.* (citation omit-
ted).]

We agree that plaintiff's complaint set forth sufficient
allegations of fact that, when taken as true, constitute a
public nuisance. As previously indicated, plaintiff alleged
that defendant's production of noise at levels in excess of
55 decibels interfered with the public health and that
plaintiff's tenants, who resided next to defendants' club,
have suffered significant "physical, emotional and finan-
cial harms" as a result of the noise level. Plaintiff also
alleged that defendants knew or should have known that
its production of noise at the level that was produced
would cause a significant, long-lasting effect on the pub-
lic's health, safety, peace, comfort, or convenience. Con-
trary to defendants' argument otherwise, these allega-
tions are not dependent on a finding that the noise level
violated local ordinances. Plaintiff alleged, in generic
terms throughout the complaint, that the noise level
interfered with its tenants' rights and that they suffered
harm as a result. Defendants have directed us to no law
that requires a showing of an ordinance violation with
respect to noise levels in order to state a cause of action for
public nuisance. Regardless of the precise decibel level, the
level of noise that constitutes a nuisance is largely a
subjective matter. Plaintiff having sufficiently alleged an
action for public nuisance, this claim survives summary
disposition under MCR 2.116(C)(8).

The same is true with respect to plaintiff's claim of
private nuisance. One is subject to liability for a private
nuisance if

(a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct [*Cloverleaf Car Co, supra* at 193.]

Plaintiff alleged in its complaint that it owned property adjacent to defendants' property and that plaintiff and its tenants had rights and privileges with respect to the use and enjoyment of plaintiff's property. Plaintiff further alleged that it and its tenants suffered physical, emotional, and financial harm as a result of defendants' noise production. Plaintiff also alleged that defendants' conduct was intentional and reckless. Accepting these allegations as true, as we are required to do when considering a motion premised on MCR 2.116(C)(8), plaintiff properly pleaded a cause of action for private nuisance. Defendant has provided no authority suggesting that, absent an ordinance violation, a certain noise level could not be considered a nuisance. Thus, irrespective of an ordinance violation, plaintiff may claim the existence of a nuisance.

That plaintiff has sufficiently alleged claims of public and private nuisance does not, however, end our inquiry. In ruling on plaintiff's motion to abate the alleged nuisance, the trial court specifically stated:

There are elements of a public nuisance, and those have to be met. And one of them is, it significantly interferes with the public's safety, peace, comfort or convenience. And Plaintiff, at least in the Plaintiff's brief, points to all the other people who own residences or commercial property in the area. . . . But there is lack of any evidence as to other people in general being or having their safety, peace, comfort or convenience interfered with. Furthermore, because this is zoned G-1 for business, it's not evidence that

loud music is going to interfere with other people's safety, peace, comfort or convenience in the area. I've heard about other businesses in the area, Brannigan's The Firm, Kelly's, Decker's . . . it's not people trying to sleep."

In essence, the trial court determined that there were no questions of material fact concerning the existence (or, more accurately, the nonexistence) of a public nuisance. Before deciding defendants' motion for summary disposition, the trial court conducted a rather lengthy evidentiary hearing on plaintiff's motion to abate the alleged nuisance. The trial court, therefore, had already been presented with considerable evidence concerning whether the complained-of noise constituted a nuisance as a matter of fact. We agree with the trial court that the prior evidence, taken with the additional evidence offered in support of the summary disposition motion (and response), establishes no question of material fact concerning the claim of a public nuisance.

Nuisance-abatement proceedings brought in the circuit court are generally equitable in nature. MCL 600.2940(5). Equitable decisions are reviewed de novo, but the findings of fact supporting those decisions are reviewed for clear error. *Yankee Springs Twp v Fox*, 264 Mich App 604, 611; 692 NW2d 728 (2004). A finding is clearly erroneous if it leaves this Court with the definite and firm conviction that a mistake has been made. *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008).

As stated previously, a public nuisance involves unreasonable interference with public rights and an unreasonable interference is conduct that (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of

a continuing nature that produces a permanent or long-lasting, significant effect on these rights. *Cloverleaf Car Co*, 213 Mich App at 190. In this case, plaintiff did not demonstrate that its grievance extends to the public, beyond the walls of its building. There are many entertainment establishments, such as defendants', in this area that attract the public rather than harm it. There was no evidence demonstrating that the public has been adversely affected. Only the private claim of plaintiff and its tenants has been presented. The circuit court ruled that "there is [a] lack of any evidence as to other people in the area that would constitute the public in general being or having their safety, peace, comfort or convenience interfered with." This finding was not clearly erroneous.

The trial court also determined that defendant's actions did not constitute a private nuisance:

> There is also an argument made that it's a private nuisance, and that also has elements that have to be met. One of them is the invasion resulting in significant harm.... Property depreciation alone is not enough to constitute a nuisance.... Now, I understand there are tenants, two of whom we have heard from, that are suffering as a result of the noise. But his is an action with the property owner, and the issue is whether there could be a private nuisance. So it's harm to the property owner for terms of a private nuisance, and not to tenants who testified ... again, having covered this is a business district, it is to be an expected noise that will occur late into the nighttime.... I can't find, on this record, that the requirement of a private nuisance is met.

The elements of a private nuisance are satisfied if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either

(i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. *Cloverleaf Car Co*, 213 Mich App at 193. To prove a nuisance, significant harm to the plaintiff resulting from the defendant's unreasonable interference with the use or enjoyment of property must be proven. *City of Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 490; 608 NW2d 531 (2000).

In the instant case, plaintiff has not proven either significant harm or unreasonable interference. The harms alleged are financial in nature: plaintiff has not been able to obtain rental rates at market prices for its property. However, evidence of the market rates for rental property connected to a nightclub were not established to show a loss of value. Secondly, the rental value of plaintiff's property had not been established because the nightclub was operating long before plaintiff converted a portion of the property into apartments. Consequently, it is difficult to discern if plaintiff's rentals had lost value. Further, our Supreme Court has held that property depreciation alone is insufficient to constitute a nuisance. *Adkins v Thomas Solvent Co*, 440 Mich 293, 312; 487 NW2d 715 (1992). Additionally, the circuit court found that, despite the playing of music next door, plaintiff had been able to rent its units. Finally, upon information and belief, plaintiff is converting part of the building at issue into a bar, which will likely produce some noise itself. This fact may also affect the rental rate of plaintiff's apartments.

The circuit court also found that the noise produced by defendant was intentional, but not unreasonable. In the context of nuisance, "unreasonable" does not refer to defendants' conduct; it means that the interference with plaintiff's rights must be unreasonable. *Id.* at 305.

The court spoke of the nature of the area as a business district and plaintiff's knowledge that it was constructing apartments next to a nightclub. The court also remarked that it was expected that the businesses in this district would produce sound late into the night. These findings were not clearly erroneous and support a conclusion that defendants' intrusion of sound, to the extent shown by plaintiff, was not unreasonable.

Plaintiff next asserts that the trial court erred in ruling that Lansing Ordinances, § 654.07(h), is inapplicable to defendants. A trial court's interpretation of an ordinance is a question of law that is reviewed de novo. *Brandon Charter Twp v Tippett*, 241 Mich App 417, 421; 616 NW2d 243 (2000).

Section 654.07(h) of the codified ordinances of Lansing prohibits sound levels in excess of 55 decibels in certain circumstances:

*Places of Public Entertainment.* Operating or playing or permitting the operation or playing of any radio, television, phonograph, drum, musical instrument, sound amplifier or similar device which produces, reproduces or amplifies sound in any place of public entertainment so as to produce a maximum sound level of fifty-five dBA on a residential real property boundary[.]

Plaintiff asserts that defendants' music produced sound at prohibited decibel levels, as measured by its sound expert and a tenant, across the boundary between the dance club and plaintiff's apartments, a residential real property boundary. Defendants' position is, and the trial court agreed, that the residential real property boundary in the ordinance refers only to boundaries in areas zoned for residential use. As plaintiff and defendants are both located in a district zoned for business, defendants' music did not intrude upon a residential boundary. On its face the ordinance is

equally susceptible to both meanings and, accordingly, is ambiguous. See *People v Gardner*, 482 Mich 41, 50 n 12; 753 NW2d 78 (2008) (indicating that a statute is ambiguous if it is equally susceptible to more than one meaning).

The rules of statutory construction also apply to ordinances. *Goldstone v Bloomfield Twp Pub Library*, 479 Mich 554, 568 n 15; 737 NW2d 476 (2007). The primary goal of judicial interpretation of statutes is to determine and effectuate the intent of the Legislature. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The first factor in determining legislative intent is the specific language of the statute. *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). Judicial interpretation is not necessary or permitted if the plain and ordinary meaning of the statutory language is clear. *People v Bell*, 276 Mich App 342, 345; 741 NW2d 57 (2007). If a statute is ambiguous, however, judicial construction is appropriate. *People v Warren*, 462 Mich 415, 427; 615 NW2d 691 (2000).

Section 654 provides definitions for "real property" and "residential area":

> *Real property* means an imaginary line along the ground surface, and its vertical extension, which line separates the real property owned by one person from that owned by another person, but not including intra-building real property divisions.

> \* \* \*

> *Residential area* means any area designated as an A, A-1, B, C, DM-1, DM-2, DM-3 or DM-4 Zoning District, pursuant to the Zoning Code or upon any plan or district map promulgated thereunder. [Lansing Ordinances, § 654.03.]

If the statute defines a term, that definition controls. *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488

(2007). The circuit court relied on the definition of "residential area" in determining that § 654.07(h) did not apply to the subject properties, which are both located in a G-1 business district. Because the ordinance uses the term "residential" to refer to zoning areas by definition, we agree.

Further, the provisions of a statute must be read in the context of the entire statute so as to produce a harmonious whole. *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008). In the findings of fact section of the noise ordinance, the city detailed its reasons for enacting such an ordinance as follows:

> The making, creation or maintenance of such excessive, unnecessary, unnatural or unusually loud noises, which are prolonged, unusual and unnatural in their time, place and use, effect and are a detriment to the public health, comfort, convenience, safety, welfare and prosperity of the residents of the City. [Lansing Ordinances, § 654.01(b).]

The ordinance was intended to address noises that are unusual and unnatural in their time, place, and use. Certainly, a dance club playing loud music at night at an entertainment destination in a business district is an anticipated and expected time, place, and use of musical noise. In contrast, music played loudly at a party in a residential area, where the city residents would not naturally and usually expect it, is the type of harm that the ordinance seems to address.

Plaintiff also contends that defendants violated another section of the noise ordinances, 654.07(a), which provides:

> *Sound Production and Reproduction Systems.* The playing, using or operating, or permitting the playing, using or operating, of any television or radio receiving set, musical instrument, phonograph or other machine or device for producing, reproducing or amplifying sound in such a

manner as to create a noise disturbance, or at any time with a louder volume than is necessary for convenient hearing for the persons who are in the room, chamber, vehicle or other place in which such an instrument, machine, set or device is operated and who are voluntary listeners thereto. The operation of any such television or radio receiving set, instrument, phonograph, machine or device between 11:00 p.m. and 7:00 a.m. of the following day in such a manner as to be plainly audible at a distance of fifty feet from the building, structure, vehicle or other place in which it is located shall be prima-facie evidence of a violation of this section. This subsection shall not apply to noncommercial speech.

The circuit court, while not specifically stating findings regarding this ordinance provision, did state that "the applicable section is paragraph H, places of public entertainment, which is the very specific section that would apply to the more general warnings that come before that."

Arguably, the plain language of § 654.07(a) could be considered to apply to defendant's nightclub so that plaintiff would have stated a claim simply by indicating that defendants played music in the nightclub at a louder than necessary volume. Again, however, statutory language " 'must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute . . . .' " *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003), quoting *Arrowhead Dev Co v Livingston Co Rd Comm*, 413 Mich 505, 516; 322 NW2d 702 (1982). The existence of a specific ordinance provision for places of public entertainment (which obviously would include nightclubs), i.e., § 654.07(h), calls into question whether the more general provision of § 654.07(a) would apply to places of public entertainment even if the two provisions do not literally conflict.

Any ambiguity may be resolved by application of the principles that a statute should be construed in a manner that avoids an absurd result, *Detroit Int'l Bridge Co v Commodities Export Co*, 279 Mich App 662, 674; 760 NW2d 565 (2008), and that "a statute need not be applied literally if no reasonable lawmaker could have conceived of the ensuing result," *id.* at 675. It would seem absurd to literally apply § 654.07(a) to a nightclub to bar music from being played there at "a louder volume than is necessary for convenient hearing" for people in the nightclub, given that as a matter of common knowledge (both presently and when § 654.07 was adopted on December 22, 1986) many nightclubs routinely play music at substantially louder than "necessary" levels as part of the entertainment they provide. In light of this consideration and the adoption of a particular provision in § 654.07(h) for places of public entertainment, we conclude that a reasonable lawmaker would not have expected § 654.07(a) to apply to a nightclub. The trial court did not err by ruling that § 654.07(a) is inapplicable to the instant matter.

Affirmed.

SAWYER, P.J., concurred.

M. J. KELLY, J. (*concurring in part and dissenting in part*). Although I do not join in the majority's reasoning, I agree with its conclusion that the trial court properly granted summary disposition of plaintiff Capitol Properties Group, LLC's (Capitol), complaint to the extent that it stated claims based on an ordinance violation and public nuisance. However, because I conclude that Capitol established a question of fact regarding whether defendants' operation of the club at issue substantially and unreasonably interfered with Capitol's use and

enjoyment of its property, I must respectfully dissent from the majority's decision to affirm the dismissal of Capitol's claim premised on private nuisance.

It is well-settled that a property owner's unreasonable generation of noise can constitute a nuisance. See *Smith v Western Wayne Co Conservation Ass'n*, 380 Mich 526, 537; 158 NW2d 463 (1968); *Grzelka v Chevrolet Motor Car Co*, 286 Mich 141, 146; 281 NW 568 (1938) (noting that the trial court properly instructed the jury on the plaintiff's theory that vibration and noise constituted a nuisance). Generally, whether the generation of noise constitutes a nuisance is a question of fact that must be determined after considering the totality of the circumstances:

> No one is entitled, in every location and circumstance, to absolute quiet, or to air utterly uncontaminated by any odor whatsoever, in the use and enjoyment of his property; but when noises are unreasonable in degree, considering the neighborhood in which they occur and all the attending circumstances, or when stenches contaminate the atmosphere to such an extent as to substantially impair the comfort and enjoyment of adjacent premises, then an actionable nuisance may be said to exist; and in applying these tests the question presented is one of fact rather than law. [*de Longpre v Carroll*, 331 Mich 474, 476; 50 NW2d 132 (1951).]

As the majority notes, Capitol adequately stated a claim for relief premised on private nuisance. Nevertheless, the majority concludes that the trial court properly dismissed that claim, given the trial court's factual findings concerning the harm to Capitol and whether the level of noise was reasonable. I do not agree that the trial court could properly grant summary disposition based on its factual findings. Capitol presented evidence that, if believed, demonstrates that defendants' operation of the club caused both substantial and unreason-

able interference with Capitol's use of the property. Hence, to the extent that there were factual disputes, the trial court should not have resolved the disputes on a motion for summary disposition. See *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994) ("The court is not permitted to assess credibility, or to determine facts on a motion for summary judgment."); MCR 2.116(C)(10).

Moreover, it appears that the trial court erroneously determined that Capitol failed to make out a claim for nuisance based on noise because the noise did not interfere with its use, but rather interfered with its tenants' use. Capitol leases its property to commercial and residential tenants—that is, its use and enjoyment is derived from its ability to make its property attractive to potential and current tenants. Capitol presented evidence that its current tenants are not happy about the volume of noise coming from defendants' property and that this interfered with Capitol's ability to satisfy its tenants' needs. Capitol also presented evidence that, because of the noise, it cannot lease its property at the going market rate. Although it is true that a mere depreciation in property value is insufficient to constitute a nuisance, this is because the diminution in value does not normally constitute interference with the use and enjoyment of property. See *Adkins v Thomas Solvent Co*, 440 Mich 293, 311-315; 487 NW2d 715 (1992) (holding that depreciation in value caused by *unfounded* fears cannot, *by itself*, constitute an actionable nuisance). In this case, Capitol has not relied on a mere depreciation in its property value based on the existence of a club next door; rather, it has presented evidence that defendants' unreasonable operation of the club caused actual and substantial harm to its ability to lease its property for commercial and residential purposes. The diminished revenue from the property and com-

plaints by tenants are evidence that Capitol's use of the property has been affected by the noise emanating from the club.

The trial court also appears to have erroneously determined that Capitol could not make out a claim for nuisance because a club had existed at that location for some time and—presumably—had always generated noise. Capitol presented evidence from which a trier of fact could conclude that the noise generated by the club is excessive under the totality of the circumstances. See *de Longpre*, 331 Mich at 476. Specifically, Capitol presented evidence that the noise generated by the club causes vibrations on Capitol's property, causes lights to flicker, and physically affects Capitol's tenants. The trial court apparently discounted the evidence concerning the degree of disruption caused to Capitol's property because the club and its predecessor have generated noise for some years. But it does not follow from the fact that this club or its predecessor has generated noise in the past—and may properly generate some level of noise now—that it may generate noise whenever it wishes and to whatever degree that it wishes. See *Smith*, 380 Mich at 537, citing *Warren Twp School Dist No 7 v Detroit*, 308 Mich 460; 14 NW2d 134 (1944) (noting that an airport is not a nuisance per se, but that it can be a nuisance if improperly operated); *Waier v Peerless Oil Co*, 265 Mich 398, 401; 251 NW 552 (1933) ("But extraordinary or unnecessary noises or smells which introduce serious annoyances, above those which arise from the ordinary and proper conduct of the business, are actionable."); *McMorran v Cleveland-Cliffs Iron Co*, 253 Mich 65, 69; 234 NW 163 (1931) (stating that whether a business's operations constituted a nuisance depended on whether the "dust, noise, and vibration are more than merely incident to the proper and skilful operation of the business"). Defen-

dants only have the right to operate their club in a reasonable manner—not any manner that they deem fit. Likewise, Capitol is not without redress merely because the club existed before Capitol decided to lease its property. See *McMorran*, 253 Mich at 69 (stating that a plaintiff who comes to the nuisance is not deprived of all redress—the plaintiff need only submit to the noise incident to the *proper* operation of the business) (emphasis added). Hence, if the noise generated by the club is in excess of that necessary to its proper operation, Capitol would be entitled to relief.

The trial court erred when it granted summary disposition of Capitol's complaint to the extent that it stated a claim based on private nuisance. Capitol has adequately alleged and supported that claim and, for that reason, is entitled to have a trier of fact determine whether defendants' operation of the club has substantially and unreasonably interfered with Capitol's use of the property after a full trial on the merits. For these reasons, I would reverse the trial court's order granting summary disposition and remand for trial on the merits consistent with this opinion.