# STATE OF MICHIGAN

# COURT OF APPEALS

HAZEL PARK MANAGEMENT, LLC,

        Plaintiff/Counter-Defendant-
        Appellee,

v

C4 PROPERTY MANAGEMENT, LLC,

        Defendant/Counter-Plaintiff-
        Appellant.

UNPUBLISHED
December 30, 2014

No. 318779
Oakland Circuit Court
LC No. 2012-130425-CH

Before: MURRAY, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

Defendant appeals the trial court's denial of its motion for summary disposition under MCR 2.116(C)(10). For the reasons stated below, we affirm in part and reverse in part, and remand for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

This action involves a dispute between two owners of adjacent properties in Hazel Park. Plaintiff Hazel Park Management, LLC ("HPM") owns a parcel that contains a retail building that fronts John R, as well as a few parking spaces to the side and behind the retail building that front a side street. Defendant C4 Property Management, LLC ("C4") owns a large parking lot directly behind HPM's retail building, which fronts an alley[1] that shares the same egress point onto the side street as HPM's few parking spaces. The garbage dumpsters for HPM's retail building are located on C4's parking lot. At the times relevant to this litigation, HPM leased the retail space to Family Dollar.[2]

---

[1] The alley is also part of C4's parcel.

[2] According to C4, HPM's predecessor in interest originally leased the retail building to Family Dollar in March 2008.

HPM and C4's properties are burdened and benefited by an easement agreement made in 2008 by their respective predecessors in interest. HPM's predecessor in interest granted C4's predecessor in interest and its "employees, agents, invitees, and customers"

> an irrevocable nonexclusive easement over the parking areas, driveways, access drives, and sidewalks located on [HPM's property] . . . for driveway access and pedestrian use.

In return, C4's predecessor in interest granted HPM's predecessor in interest and its "employees, agents, invitees, and customers"

> an irrevocable nonexclusive easement over the parking areas, driveways, access drives and sidewalks located on [C4's property] . . . for driveway access, pedestrian use, and for use by [HPM] and its invitees, for the placement of garbage dumpsters.

The easement agreement specifies that the easement granted is intended to be "appurtenant"—i.e., a permanent benefit and burden to the property at issue—and to "run with the land." It also includes an integration clause, and the parties recorded the easement in June 2008 with the Oakland County Clerk's office.

Sometime in late 2012, employees of HPM's tenant, Family Dollar, asked C4's owner to move his car out of C4's parking lot so that Family Dollar's delivery truck could park lengthwise in the lot and unload its goods into the store. After this incident, C4 erected a six-foot high chain link fence around its parking lot, complete with "no parking" signs. C4 locked the fence gate after business hours, which denied HPM or Family Dollar employees access to the parking lot (and the garbage dumpsters located on the parking lot) during that time. It also reduced the amount of parking space available to HPM and Family Dollar customers.[3]

HPM filed suit against C4 in the Oakland Circuit Court and requested that the court require C4 to remove the fence. HPM later amended its complaint and moved for summary disposition under MCR 2.116(I)(2), on the grounds that C4 violated the easement agreement by construction of the fence, prohibition of parking, and denial of access to the parking lot after business hours. Specifically, HPM argued that though the easement agreement never explicitly mentioned "parking," "access" to C4's parking lot necessarily included the right to park on C4's parking lot. To support its assertion, HPM submitted extrinsic evidence on the easement agreement, in the form of an affidavit of one of the original parties to the agreement. He stated that the easement was intended to allow commercial delivery trucks to load and unload in the parking lot, and included unrestricted parking for HPM and its tenants. HPM also claimed C4 tortiously interfered with its Family Dollar lease, and that it had an implied easement on C4's parking lot that permitted it to access and park on the lot independently of the 2008 easement agreement.

---

[3] As noted, HPM's property contains some parking spaces to the side and back of its retail building.

C4 also moved for summary disposition under MCR 2.116(C)(10), and claimed that HPM violated the easement agreement through its use of the parking lot for Family Dollar–related parking. It stressed that the easement agreement never explicitly mentioned "parking," and that the agreement was integrated, which prohibited HPM's introduction of extrinsic evidence. It also alleged that HPM's use of the parking lot constituted trespass and nuisance.

In September 2013, the trial court granted HPM's motion for summary disposition. It held that C4's fence and "no parking" signs violated the easement agreement because the fence denied HPM and its tenants "access" to the parking lot. The court further ruled that the easement allowed garbage trucks affiliated with HPM or its tenant to use C4's parking lot for the removal of garbage. The trial court accordingly rejected C4's claims of trespass and nuisance, because the use of the parking lot of which C4 complained was covered by the easement. The trial court did not address whether: (1) C4 tortiously interfered with HPM's contract with Family Dollar; (2) HPM had an implied easement for parking on C4's parking lot; or (3) the easement permitted HPM and its affiliates to park in the lot for purposes other than the removal of garbage.

On appeal, C4 makes the same arguments as it did in the trial court, and requests that we reverse the trial court's denial of its motion for summary disposition. HPM asks us to uphold the ruling of the trial court, and to clarify that the scope of the easement allows it and its tenants to park in C4's parking lot for purposes other than the removal of garbage. It has dropped its claims as to the existence of an implied easement for parking and tortious interference with contract.

## II. STANDARD OF REVIEW

"The scope and extent of an easement is generally a question of fact that is reviewed for clear error on appeal. . . . However, when reasonable minds could not disagree concerning these issues, they should be decided by the court on summary disposition as a matter of law." *Wiggins v City of Burton*, 291 Mich App 532, 550; 805 NW2d 517 (2011) (citations omitted).

A trial court's decision on a motion for summary disposition is reviewed de novo. *Barrow v Detroit Election Comm*, 305 Mich App 649, 661; 854 NW2d 489 (2014). Summary disposition is proper under MCR 2.116(I)(2) "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment." MCR 2.116(I)(2). "In reviewing a motion under MCR 2.116(C)(10), [the Court] considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Barrow*, 305 Mich App at 661. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. ANALYSIS

## A. THE EASEMENT AGREEMENT

## 1. LEGAL STANDARDS

An easement is the right to use the land of another for a specified purpose. Michigan courts recognize two types of easements: easements appurtenant and easements in gross. An appurtenant easement attaches to the land and is incapable of existence apart from the land to which it is annexed. An easement appurtenant is necessarily connected with the use or enjoyment of the benefited parcel and may pass with the benefited property when the property is transferred.

An easement in gross is one benefiting a particular person and not a particular piece of land. [*Heydon v. MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007) (citations omitted).]

"An easement may be created by express grant, by reservation or exception, or by covenant or agreement." *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 661; 651 NW2d 458 (2002). "The language of an express easement is interpreted according to rules similar to those used for the interpretation of contracts." *Wiggins*, 291 Mich App at 551.

Our interpretation begins by "examining the plain language of the easement, itself. If the language of the easement is clear, it is to be enforced as written and no further inquiry is permitted." *Id*. A party's use of the servient estate "must be confined to the plain and unambiguous terms of the easement." *Dyball v Lennox*, 260 Mich App 698, 708; 680 NW2d 522 (2003). If the terms used in the easement agreement are not defined, a court "may resort to a dictionary such as *Webster*'s to establish the meaning of a term." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 467; 761 NW2d 846 (2008).

If the easement agreement is ambiguous, we look beyond "the four corners of the instrument" to the "situation of the lands, the title, and of the parties to the instrument, to ascertain from the instrument itself the true intent of the parties thereto." *Hasselbring v Koepke*, 263 Mich 466, 477–478; 248 NW 869 (1933). "Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *Barclae v Zarb*, 300 Mich App 455, 480; 834 NW2d 100 (2013).

## 2. APPLICATION

Here, the terms of the easement agreement are plain and unambiguous. HPM, and its "employees, agents, invitees, and customers"[4] have

---

[4] Though the easement agreement mentions the benefits and burdens running to the "owners and occupiers" of the parcels at issue (which would indicate that the easement was limited to the contracting parties—i.e., an easement in gross) the agreement also explicitly specifies that it creates an "appurtenant" easement that "run[s] with the land." Because Michigan law favors appurtenant easements over easements in gross, we analyze the easement created by the agreement as an appurtenant easement. See *von Meding v Strahl*, 319 Mich 598, 610; 30 NW2d

an irrevocable nonexclusive easement over the parking areas, driveways, access drives and sidewalks located on [C4's property] . . . for driveway access, pedestrian use, and for use by [HPM] and its invitees, for the placement of garbage dumpsters.

The agreement never specifies that HPM and its "employees, agents, invitees, and customers" may "park" on C4's parking lot—it only speaks of "access" to the parking lot for "pedestrian use" and for "use by [HPM] and its invitees, for the placement of garbage dumpsters." "Access" is defined as "the ability, right, or permission to approach, enter, speak with, or use; admittance" and more specifically as "a way or means of approach." *Random House Webster's Unabridged Dictionary* (1998). "Use" means "to employ for some purpose; put into service; make use of." *Id.*

Accordingly, C4's fence prevents HPM and its "employees, agents, invitees, and customers" from "access[ing]" C4's parking lot, in that it does not allow these groups the ability to "approach or enter" the parking lot. Most importantly, the fence prevents "[HPM] and its invitees" from "us[ing]" the lot "for the placement of garbage dumpsters," and the disposal and removal of the garbage placed in those dumpsters. C4's fence thus violates the plain terms of the easement agreement. It must be removed to allow HPM and HPM's "employees, agents, invitees, and customers" "access" to the parking lot, for "driveway access," "pedestrian use" and "the placement of garbage dumpsters." And because the easement agreement specifies that the "garbage dumpsters" can be "use[d]" by HPM, HPM and its "employees, agents, invitees, and customers" must have a means of emptying the garbage dumpsters. Accordingly, garbage collection trucks must have "access" to the dumpsters on C4's parking lot, so they may remove the garbage from the dumpsters. C4's fence prevents garbage collection trucks from "access[ing]" the dumpsters to remove the trash, and it thus must be removed for this reason as well.

However, the "uses" of C4's parking lot which HPM demands, go far beyond the specific activities described above. HPM seeks to allow Family Dollar customers to park in C4's parking lot, as well as parking for Family Dollar delivery trucks. "Parking" in C4's parking lot is not one of the benefits conferred by the easement agreement to HPM's property—again, it only grants "access" to the parking lot and "use" for specific purposes (i.e., garbage collection) that do not include unrelated parking.[5]

Moreover, contrary to HPM's assertions, the plain language of the easement agreement indicates that the drafters of the agreement *intended* to omit the term "parking" from the

---

363 (1948) ("[a]n easement will never be presumed to be a mere personal right where it can fairly be construed to be appurtenant to some other estate").

[5] HPM's arguments regarding the intent of the original contracting parties is irrelevant, as is its submission of parol evidence to substantiate these arguments. The terms of the easement agreement are unambiguous, and the agreement includes an integration clause, meaning that it is not appropriate for the Court to consider parol evidence. *Zarb*, 300 Mich App at 480.

agreement. The operative clauses of the easement agreement are almost identical,[6] in that HPM grants "access" to its property to C4 (without granting the right to "park" on its property), and, likewise, C4 grants "access" to its property to HPM (again, without granting the right to "park" on its property). The burdens and privileges created by the easement are thus reciprocal, and involve "access," not "parking." The absence of the term "parking" from the operative clauses of the easement agreement, and the reciprocal nature of the burdens and benefits received by each property owner, are a strong indication that the drafting parties did not intend the easement agreement to benefit either property with the right to park on either parcel. It is thus unlikely that the omission of the term "parking" was a simple drafting mistake or oversight by the drafting parties.

The trial court's interpretation of the easement agreement is therefore incorrect, insofar as it permits HPM and its "employees, agents, invitees, and customers" to park on C4's parking lot. However, the trial court correctly ordered C4 to remove its fence around its parking lot, because the fence prevents HPM and its "employees, agents, invitees, and customers" from "access[ing]" the parking lot for the specific "uses" permitted by the easement agreement—i.e., "pedestrian use," "driveway access," and garbage removal.

## B. C4'S TRESPASS AND NUISANCE CLAIMS

"[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it." *Terlecki v Stewart*, 278 Mich App 644, 653–654; 754 NW2d 899 (2008). "In Michigan, recovery for trespass to land is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Id*. at 654 (citations omitted).

There are two types of nuisance: public nuisance and private nuisance. *Capitol Properties Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 427–429; 770 NW2d 105 (2009). In turn, private nuisance has two varieties: nuisance per se and nuisance in fact. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 269; 761 NW2d 761 (2008). Nuisance per se "is an act, occupation, or structure, which is a nuisance at all times and under any circumstances, regardless of location or surroundings." *Id*. at 269 n 4. Nuisance in fact is an act that becomes a nuisance "by reason of circumstances and surroundings." *Id*. at 269 n 5. "The difference between a nuisance *per se* and one in fact is not the remedy but only in the proof of it." *Id*. at 269–270 (emphasis in original). A party is liable for both types of private nuisance where:

> (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and

---

[6] The only difference between the two clauses is the specification of HPM's right to use C4's property "for the placement of garbage dumpsters." C4's easement, as noted, does not contain such a reciprocal right.

unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [*Capitol Properties Group*, 283 Mich App at 429.]

Here, C4's trespass and nuisance claims involve two separate areas of its property: (1) its fenced-off parking lot; and (2) its alley that runs behind HPM's retail property. As to the parking lot, C4 claims that HPM's past use of the garbage dumpsters, subsequent placement of trash outside the fence gate, and past Family Dollar–related parking on its lot constitutes trespass and nuisance. These claims are absurd because: (1) the easement agreement expressly allows HPM to place and use garbage dumpsters on the parking lot (meaning that, as HPM notes, C4 is responsible for the placement of trash outside the fence gate—if the gate had been unlocked, and HPM had had access to the dumpsters, the trash would be in the dumpsters, not elsewhere on C4's property); and (2) C4's fence has prevented HPM or its "employees, agents, invitees, and customers" from parking on C4's parking lot, or accessing it during the periods when it is locked.

As to the alley, C4 asserts that the city of Hazel Park has classified the alley as a fire lane, and that Family Dollar's use of the alley for delivery truck loading and unloading is a private nuisance, because it violates MCL 257.674(1)(aa).[7] Leaving aside whether mere violation of a law constitutes a private nuisance, C4 provides no support for its assertion that Hazel Park has classified the alley as a fire lane, beyond a site plan[8] of the properties that shows the handwritten words "fire lane" on the area representing the alley.[9] HPM provided its own site plan of the properties that appears to have been approved by Hazel Park's fire marshal, which nowhere specifies that the alley is a fire lane. C4's trespass and nuisance claims are therefore both disingenuous and without merit.

The trial court therefore correctly dismissed C4's claims for trespass and nuisance.

## IV. CONCLUSION

Accordingly, we reverse the ruling of the trial court that permits general parking by HPM's "employees, agents, invitees, and customers" on C4's parking lot. We affirm the ruling of the trial court that required C4 to remove its fence, because the fence prevents HPM and its

---

[7] MCL 257.674(1)(aa) states that parking is prohibited in "a place or in a manner that blocks access to a space clearly designated as a fire lane."

[8] It appears that C4 received the site plans from the city of Hazel Park, because they are accompanied by a letter from the city's planning director on official city letterhead. But the site plans were performed by a private engineering firm and do not bear the official approval of the city, unlike HPM's site plan.

[9] Further, as HPM notes, the alley did not have signs clearly designating that it was a fire lane— it only had "no parking" signs that C4's owner put up himself close to the initiation of this lawsuit. Accordingly, the alley at issue was not "clearly designated as a fire lane" per MCL 257.674(1)(aa).

"employees, agents, invitees, and customers" from "access[ing]" the parking lot for the specific "uses" permitted by the easement agreement—i.e., "pedestrian use," "driveway access," and garbage removal.

We affirm the trial court's rejection of C4's claims for trespass and nuisance, because they are unsupported and without merit.

Affirmed in part and reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Joel P. Hoekstra