# STATE OF MICHIGAN

# COURT OF APPEALS

DEBORAH ZERAFA and RICHARD ZERAFA,

        Plaintiffs/Counterdefendants-
        Appellants,

v

PETER HESSE and MARY HESSE,

        Defendants/Counterplaintiffs-
        Appellees.

UNPUBLISHED
October 9, 2018

No. 339409
Grand Traverse Circuit Court
LC No. 2016-031881-NZ

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Following a bench trial, the trial court entered an order awarding plaintiffs $7,400 in damages resulting from defendants' trespass and assault. Additionally, the trial court granted equitable relief to defendants regarding the two easements on defendants' property and plaintiffs' trespass on defendants' land. We affirm.

## I. BACKGROUND

Defendants, Peter and Mary Hesse, own the property on which plaintiffs, Richard and Deborah Zerafa[1], hold two easements. The properties share a border and lie within Acme Township's Agricultural Zoning District. The easement at issue is a roadway along the property boundary and is plaintiffs' only means of ingress and egress to their property. In a 2014 lawsuit, plaintiffs sued defendants for interference with their easement rights, resulting in an April 2015 consent judgment that allowed plaintiffs to make certain improvements to the easement. The consent judgment provided in pertinent part:

---

[1] Because many of the parties share last names, we will use first names in this opinion where appropriate.

-1-

(2) Certain boulders, 80 evergreen trees and approximately 600 [feet] of fence along Defendant[s'] northern property line encroach on the easement at issue.

(3) Plaintiffs at their expense had the boulders relocated to the south edge of the 40 [foot] easement per Defendants['] request.

(4) Plaintiffs and their successors are granted the right to move the fencing encroaching into the easement at their own expense as long as the integrity of the field is enclosed during the process.

(5) Plaintiffs and their successors are granted the right to remove or trim the trees that encroach on the easement at their expense.

(6) Neither the Defendants nor their tenants shall impede ingress or egress of the easement into Plaintiffs['] property.

In April 2016, plaintiffs began making improvements to the easement to facilitate ingress and egress and the sale of their home. These improvements required plaintiffs to rent a bulldozer and hire an operator, Douglas Brinkman, to run it at considerable expense. Shortly after the improvements began, defendants sued plaintiffs, alleging that plaintiffs were injuring or threatening to injure their property. The trial court initially granted defendants' request for a temporary restraining order (TRO), but subsequently vacated it.

Plaintiffs filed their complaint in this action alleging that shortly after the trial court vacated the TRO, defendants installed a large pig-farm sign on the side of one of the buildings adjoining the easement, which prevented plaintiffs from selling their home for full market value. Additionally, plaintiffs alleged that, after the trial court vacated the TRO, Brinkman attempted to resume work on the easement, but Peter used his car to prevent Brinkman from operating the bulldozer, leading to a verbal altercation between Richard and Peter, which ended when Peter attempted to attack Richard and Brinkman stepped between the two men. Accordingly, plaintiffs alleged trespass, interference with easement use, contempt, nuisance, tortious interference with a business relationship or expectancy, and assault.

Defendants filed a counterclaim alleging trespass and contempt. Specifically, defendants alleged that plaintiffs pushed boulders that were on the easement onto defendants' property and that, throughout the summer of 2016, plaintiffs improperly trimmed several trees along the north side of the easement and moved a fence off the easement and onto defendants' property. According to defendants, plaintiffs performed operations on the easement without obtaining a survey to guide the work and installed the fence "in a poor and shoddy manner" that did not "maintain the integrity of the field," contrary to the terms of the consent judgment.

Following a bench trial, the trial court concluded that plaintiffs were entitled to $6,900 in trespass damages and $500 in assault damages. Additionally, the trial court found that plaintiffs trespassed on defendants' property by placing the boulders there, moving the fence, and improperly trimming the trees. Thus, the trial court ruled that (1) defendants would be enjoined from interfering with completion of the easement maintenance; (2) plaintiffs would move the

boulders to where they were as of April 14, 2015, or remove them from the easement entirely; (3) plaintiffs would move the portions of the fence encroaching on defendants' property back to the property line; and (4) "any future tree trimming/removal shall be limited to trees encroaching on the [e]asement." The trial court further held that both plaintiffs and defendants were in contempt of court for their respective violations of the consent judgment but declined to award damages to any party.

This appeal followed.

## II. ANALYSIS

*Standards of Review.* We review a trial court's findings of fact, including an award of damages, under the clearly erroneous standard. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000); *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 177; 530 NW2d 772 (1995). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Walters*, 239 Mich App at 456. "The granting of injunctive relief is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Pickering v Pickering*, 253 Mich App 694, 700; 659 NW2d 649 (2002). Likewise, "[w]e review for an abuse of discretion a trial court's decision to hold a party or individual in contempt." *In re Contempt of Dudzinski*, 257 Mich App 96, 99; 667 NW2d 68 (2003). "An abuse of discretion occurs when a court chooses an outcome outside the range of principled outcomes." *Baynesan v Wayne State Univ*, 316 Mich App 643, 651; 894 NW2d 102 (2016). We review de novo a trial court's conclusions of law. *Walters*, 239 Mich App at 456.

*Trespass and Contempt.* On appeal, plaintiffs first argue that the trial court erroneously concluded that they committed a trespass by moving the fence and boulders onto defendants' property and by trimming the trees. "A trespass is an unauthorized invasion upon the private property of another." *D'Andrea v AT&T Mich*, 289 Mich App 70, 73; 795 NW2d 620 (2010) (cleaned up). Where an easement is concerned, "[a]ctivities by the owner of the dominant estate that go beyond the reasonable exercise of the use granted by the easement may constitute a trespass to the owner of the servient estate." *Schadewald v Brule*, 225 Mich App 26, 40; 570 NW2d 788 (1997).

The trial court concluded that plaintiffs committed a *de minimis* trespass regarding the trees, boulders, and fence, which did not interfere with defendants' use and enjoyment of the servient estate. In lieu of awarding damages to defendants, the trial court ordered plaintiffs to (1) relocate the portions of fence encroaching on defendants' property back to the easement and (2) either return the boulders to their location as of April 14, 2015, or remove them entirely from the easement. Further, the trial court ordered that any future tree trimming or removal would be limited to the trees encroaching on the easement.

With respect to the fence, the trial court's finding was supported by the testimony of Neil Way, who surveyed the land and indicated that the existing fence line was outside of the easement by 0.4 feet and 0.9 feet. There was no testimony suggesting that defendants ever authorized this invasion. Although the consent judgment granted plaintiffs "the right to move the fencing encroaching into the easement at their own expense as long as the integrity of the

field is enclosed during the process," nothing authorized them to move the fence to defendants' land. Therefore, because plaintiffs' movement of the encroaching fence resulted in "an unauthorized invasion upon the private property of another," see *D'Andrea*, 289 Mich App at 73, it constituted a trespass.

With respect to the boulders, the consent judgment did not give plaintiffs the right to move the boulders to defendants' property. While plaintiffs argued below that defendants granted them permission to move the boulders to their property, the trial court's order indicates that it did not credit this testimony. We must defer to the trial court's credibility determinations and therefore conclude that the trial court did not err by finding that plaintiffs committed a trespass by placing the boulders on defendants' property. *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008). Plaintiffs argue on appeal that the trial court's ruling was erroneous because the boulders were placed in the exact location that the consent judgment recognized. If plaintiffs' contention is true, however, they would still not be entitled to relief. If the boulders were already placed where the trial court ordered them to be moved, plaintiff can show no harm from the ruling, even if that ruling is erroneous. MCR 2.613(A); *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 529; 730 NW2d 481 (2007).

Similarly, concerning the trees, the only relief that the trial court awarded was to order that any future tree trimming be made in accordance with the consent agreement. Assuming arguendo that the trial court erred by finding that plaintiffs improperly trimmed the trees and committed a trespass thereby, the trial court only ordered plaintiffs to adhere to the consent judgment they were already required to follow. Thus, plaintiffs can show no harm from any error. MCR 2.613(A); *Ypsilanti Fire Marshal*, 273 Mich App at 529.

Related to their claim that the trial court erred by concluding that they committed trespasses on defendants' property, plaintiffs also argue that the trial court erred by finding them liable for contempt of court for violating the consent judgment. The trial court found that Peter "willfully ignored the order of the Court when he prevented Brinkman from working on April 30, 2016," and that "[t]here is no question that [he] intentionally obstructed and delayed maintenance on the [e]asement," both before issuance of the TRO and after the trial court vacated it. Yet, the trial court also found that plaintiffs violated the consent judgment "by moving the boulders off the easement onto the Hesse property, [and] by improperly relocating portions of the fence and by trimming trees that were not encroaching on the [e]asement." Accordingly, the trial court concluded that, because all parties were liable for contempt of court, neither was entitled to damages.

As already explained, the trial court did not err by concluding that plaintiffs committed trespasses by moving the fence and boulders to defendant's property. The consent order governed the parties' resolution of these issues and, to the extent that the plaintiffs acted outside of the consent order by committing the above trespasses, they thereby violated that order. Thus, the trial court did not abuse its discretion by finding plaintiffs in contempt of court.

*Assault*. Plaintiffs claim that the trial court erroneously calculated Richard's damages stemming from Peter's assault. Damages in a tort action may not be speculative:

The general rule is that remote, contingent, and speculative damages cannot be recovered in Michigan in a tort action. A plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable. Damages, however, are not speculative simply because they cannot be ascertained with mathematical precision. Although the result may only be an approximation, it is sufficient if a reasonable basis for computation exists. [*Health Call of Detroit v Atrium Home & Health Care Services, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005) (cleaned up).]

In this case, the trial court concluded that Peter "committed a simple assault on Richard," but that there was "insufficient record evidence that [Peter's] threats and animosity have forced life changes for [plaintiffs] and that Richard has suffered emotional damage." Accordingly, the trial court awarded Richard $500.00 in damages—the amount of a criminal fine under MCL 750.81— noting that "[t]he assault that occurred . . . is akin to a simple or misdemeanor assault."

Other than testimony from each plaintiff establishing how Richard felt since the assault occurred, there was no evidence that the trial court could have used to calculate a larger amount of damages to a degree of reasonable certainty. Richard testified that he felt trapped in his own home, but the record makes clear that his fear was largely due to the ongoing dispute, rather than the actual simple assault. Thus, the trial court was left to quantify the monetary amount attached to the fear Richard felt *during* the simple assault. Because this fear is, by its very nature, difficult to quantify, we conclude that the trial court did not clearly err by using the fine that would be assessed in a criminal case as a benchmark for damages that Richard should recover civilly. Plaintiffs did not meet their burden to show that a higher award was justified.

*Tortious Interference*. Plaintiffs next claim that the trial court erroneously concluded that they failed to establish their claim of tortious interference with a business relationship or expectancy. To prove tortious interference with a business relationship or expectancy, a plaintiff must show (1) the existence of a valid business relationship or expectancy; (2) the defendant's knowledge of the relationship or expectancy; (3) "an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy"; and (4) damages. *Health Call of Detroit*, 268 Mich App at 90. Any expectancy "must be a reasonable likelihood or probability, not mere wishful thinking." *Cedroni Ass'n, Inc v Tomblinson, Harburn Assoc, Architects & Planners Inc*, 492 Mich 40, 45; 821 NW2d 1 (2012) (cleaned up).

Plaintiffs' tortious-interference claim was predicated upon their belief that defendants' pig-farm sign turned prospective buyers away from purchasing their property. While some buyers may have been disinclined to purchase the property, this is insufficient to sustain a tortious-interference claim. Plaintiffs' home was listed for sale for 13 months before the erection of the pig-farm sign, during which it did not sell. Although there was interest in the property, plaintiffs' hope that a buyer would purchase their home is insufficient to establish a business relationship or expectancy. Accordingly, the trial court properly concluded that plaintiffs' tortious-interference claim was without merit.

*Private Nuisance*. Finally, plaintiffs argue that the trial court erroneously concluded that their nuisance claim was without merit. To support their claim of private nuisance, plaintiffs

were required to show that (1) defendants interfered with the use or enjoyment of their property rights and privileges; (2) defendants' invasion of those property interests caused plaintiffs significant harm; and (3) the invasion was either intentional and unreasonable or otherwise "actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct." *Capitol Properties Group, LLC v 1247 Ctr St, LLC*, 283 Mich App 422, 431-432; 770 NW2d 105 (2009).

Plaintiffs argue that defendants' pig-farm sign constituted an actionable private nuisance. We disagree. First, it is uncontested that defendants' property was zoned for agricultural use and that some pig farming did occur there. Plaintiffs have not shown that the pig farming was performed outside of "generally accepted agricultural and management practices," and therefore the operation was protected by the Right to Farm Act. MCL 286.473. Moreover, the sign advertising that operation was within the township zoning ordinances for agricultural advertisement. Second, the record shows that plaintiffs' damages would be limited to the depreciation in their home value as a result of the pig-farming advertisement. "[P]roperty depreciation alone is insufficient to constitute a nuisance." *Capitol Properties Group, LLC*, 283 Mich App at 432. Finally, the record shows that plaintiffs' home did not sell for 13 months before the erection of the sign, which indicates that other factors prevented any sale. To the extent that the pig-farm sign constituted another reason buyers were disinclined to purchase plaintiffs' home, the sign is not the type of significant harm that constitutes a public nuisance.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle